[No. B219178. Second Dist., Div. Three. May 13, 2010.]

ARTURO ARGUELLES-ROMERO et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
AMERICREDIT FINANCIAL SERVICES, INC., Real Party in Interest.

**COUNSEL**

Chavez & Gertler, Mark A. Chavez, Nance F. Becker, F. Paul Bland; Kemnitzer, Anderson, Barron, Ogilvie & Brewer, Bryan Kemnitzer and Nancy Barron for Petitioners.

No appearance for Respondent.

Sheppard, Mullin, Richter & Hampton, Sascha Henry; Peter S. Hecker, Anna S. McLean and Craig A. Pinedo for Real Party in Interest.

Opinion

CROSKEY, Acting P. J.—Plaintiffs Arturo Arguelles-Romero and Evangelina Amezcua attempted to pursue a class action against AmeriCredit Financial Services, Inc. (AmeriCredit), the assignee of plaintiffs' automobile financing contract. Relying on an arbitration clause with a class action waiver contained in the contract, AmeriCredit moved to compel individual arbitration. Plaintiffs opposed the motion on the basis that the arbitration clause and class action waiver constituted an unconscionable exculpatory clause. The trial court disagreed and granted the motion to compel individual arbitration. Plaintiffs sought immediate review by means of a petition for writ of mandate and we issued an order to show cause. While we hold the trial court did not err in finding the class action waiver was not unconscionable, we also conclude that it should have also performed a discretionary analysis on whether a class action is a significantly more effective practical means of vindicating the unwaivable statutory rights at issue. We therefore grant the petition and remand with directions.

## *FACTUAL AND PROCEDURAL BACKGROUND*

### 1. *Underlying Facts*

On February 19, 2006, plaintiffs, a married couple, purchased a new 2006 Chevrolet Tahoe truck from a dealer. The purchase price of the truck was $38,845.46, including taxes and fees. An $8,000 downpayment was made, comprised of $2,500 cash and a $5,500 manufacturer's rebate. The remainder of the purchase price was financed at an interest rate of 15.99 percent, over a term of six years. The contract was eventually assigned to AmeriCredit.

At some point, plaintiffs fell behind in their payments.[1] On October 21, 2008, AmeriCredit repossessed their truck. On October 23, 2008, AmeriCredit sent plaintiffs a notice of intent to sell the truck. Civil Code section 2983.2, a part of the Automobile Sales Finance Act (ASFA), sets forth certain requirements for a notice of intent to dispose of a repossessed motor vehicle. For example, the notice must set forth the right to redeem the motor vehicle, and, where applicable, the conditional right to reinstate the contract. (Civ. Code, § 2983.2, subd. (a)(1) & (2).) Case law has interpreted these requirements to mean that the notice must "provide sufficient information to defaulting buyers

---

[1] Plaintiffs' writ petition speaks in terms of "an alleged failure to make payments." Arguelles-Romero, however, signed a declaration conceding that he "fell behind on payments" after approximately 16 months.

to enable them to determine precisely what they must do in order to reinstate their contracts, including stating the amounts due, to whom they are due, the addresses and/or contact information for those parties, and any other specific actions the buyer must take." (*Juarez v. Arcadia Financial, Ltd.* (2007) 152 Cal.App.4th 889, 899 [61 Cal.Rptr.3d 382].) That case further held, "[t]he creditor must also inform the consumer regarding any additional monthly payments that will come due before the end of the notice period, as well as of any late fees, or other fees, the amount(s) of these additional payments or fees, and when the additional sums will become due." (*Id.* at p. 905.)

The notice AmeriCredit sent to plaintiffs informed them of both the right to redeem the vehicle and the conditional right to reinstate the contract. The notice set forth both the amount of money which would be required to redeem the vehicle and the amount necessary to reinstate the contract, and itemized both amounts. However, the calculation appeared to have been made as of the date of the notice; underneath each total was written, "Plus any storage charges, additional payments, and late charges which become due after the date of this notice." Plaintiffs would ultimately allege that the notice was insufficient under the ASFA for this reason.[2]

There is no allegation that plaintiffs attempted to exercise their right to redeem or their right to reinstate. AmeriCredit sold the truck on November 21, 2008, for $8,400. Subtracting this from the unpaid amount financed and adding in other expenses and fees, AmeriCredit calculated a deficiency owing of $16,452.74. AmeriCredit wrote plaintiffs with this calculation, stating, "Please contact us to make arrangements for the payment of this debt. If you do not, AmeriCredit may take any legal action necessary in order to recover the debt." Plaintiffs allege that they have paid a portion of the deficiency, but do not indicate the precise amount.

## 2. Allegations of the Complaint

Under the ASFA, a defaulting buyer "shall be liable for any deficiency after disposition of the repossessed . . . motor vehicle only if the notice" of

---

[2] We express no opinion on the merits of this allegation, nor do we mean to imply that this is the sole basis on which plaintiffs allege AmeriCredit's notice failed to comply with the ASFA. We do note, however, that plaintiffs allege that the notice "fails to state that, upon written request to extend the redemption period and any applicable reinstatement period for 10 days, the seller or holder shall without further notice extend the disposition period accordingly." The notice, which was attached to the complaint, states, "We will extend, without further notice, the redemption period (or reinstatement period, if allowed above) for an additional 10 days upon written notice."

intent to sell complied with all requirements set forth in Civil Code section 2983.2, discussed above. (*Id.*, subd. (a).) As plaintiffs believe the notice of intent they received from AmeriCredit was inadequate, they brought the instant action against AmeriCredit, asserting that they are not liable for the deficiency balance. They seek a refund of any amounts paid and an order enjoining AmeriCredit from further collection efforts. Additionally, they seek an order requiring AmeriCredit to inform all credit reporting agencies to delete all references to the deficiency balance allegedly owed.[3]

Plaintiffs allege, on information and belief, that the notice of intent to sell which they received was a standard form sent by AmeriCredit to its California borrowers whose vehicles were repossessed. Plaintiffs therefore seek to maintain a class action, on behalf of all persons who were issued such a notice from AmeriCredit in California, within the four years preceding the date of the complaint, who were subsequently assessed a deficiency balance following the disposition of the vehicle, and from whom AmeriCredit collected or attempted to collect any portion of the deficiency balance. They allege causes of action for violation of the ASFA, the unfair competition law (Bus. & Prof. Code, § 17200 et seq.), and for declaratory relief. They seek restitution and injunctive relief on behalf of the entire class. Additionally, plaintiffs seek attorney fees under the ASFA (Civ. Code, § 2983.4) and Code of Civil Procedure section 1021.5.

### 3. *Motions to Compel Arbitration and Stay Discovery*

AmeriCredit responded to the complaint with a motion to compel individual arbitration, based on an arbitration clause and class action waiver in the purchase and financing contract plaintiffs had signed when they purchased the truck.[4] At the same time, AmeriCredit moved for a protective order and to

---

[3] They also seek an order requiring AmeriCredit to tell the credit reporting agencies to delete any reference to the *repossession*. Plaintiffs do not allege a basis for such an order; they challenge AmeriCredit's right to collect the deficiency, not AmeriCredit's right to repossess the truck.

[4] The back of the contract includes, in a box, a section beginning, "ARBITRATION CLAUSE," and stating, "PLEASE REVIEW • IMPORTANT • AFFECTS YOUR LEGAL RIGHTS." It then provides, "1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL. [¶] 2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS. [¶] 3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION." Three paragraphs of fine print follow. Beyond the class action waiver, the only term of the arbitration clause plaintiffs challenge as unconscionable is its alleged one-sidedness. The contract provides, "You

stay discovery pending resolution of its motion to compel arbitration. Plaintiffs opposed the motion, seeking limited discovery directed to the issue of the enforceability of the arbitration clause and class action waiver. Plaintiffs' opposition stated, "The contract is a standard form contract used throughout California and is a 'take it or leave it' contract, with customers having no ability to negotiate the terms of the contract, particularly those set forth on the back of the contract, including the arbitration provision. It is anticipated that Ameri[C]redit will respond to the discovery by acknowledging that it does not accept contracts in which the consumer may have crossed off portions of the terms set forth on the back of the contract [including the arbitration clause and class action waiver]. [¶] In addition, it is anticipated that discovery will reveal that Ameri[C]redit uses the court system almost exclusively against its customers in seeking default judgments. The arbitration provision will only be used if a consumer attempts to file a class action as in this case. It is essentially a 'poison pill' designed to insulate Ameri[C]redit from liability that would otherwise be imposed under California's law."

The trial court permitted plaintiffs certain limited written discovery, and indicated that if plaintiffs had any doubts regarding the veracity of AmeriCredit's responses, they could apply ex parte for followup discovery, which might include a deposition. Plaintiffs did not apply for further discovery.[5]

### 4. *AmeriCredit's Discovery Responses*

AmeriCredit's discovery responses were not as plaintiffs had expected. Plaintiffs had "anticipated that Ameri[C]redit will respond to the discovery by acknowledging that it does not accept contracts in which the consumer may

---

and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit." The class action provision is not severable; the contract provides, "If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this arbitration clause shall be unenforceable." Although plaintiffs were not required to sign or initial any provision on the back of the contract, they signed the front under a statement indicating, "YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, IN-CLUDING THE ARBITRATION CLAUSE ON THE REVERSE SIDE, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT."

[5] In their petition for writ of mandate, plaintiffs argue that they were prejudiced by the court's failure to permit additional discovery. As plaintiffs were permitted to apply ex parte for followup discovery, and did not do so, the contention is considered waived.

have crossed off portions of the terms set forth on the back of the contract [including the arbitration clause and class action waiver]." AmeriCredit made no such acknowledgement. Instead, it denied that it refused assignment of contracts where terms on the back had been changed, and specifically denied that it refused assignment of contracts in which the customers had deleted the arbitration provision. In fact, AmeriCredit's senior vice president of dealer services verified a discovery response stating, "Approximately 40 percent of the California contracts [AmeriCredit] accepted for assignment since March 2005 do not contain either an arbitration provision or a class action waiver."

As to plaintiffs' assertion that "it is anticipated that discovery will reveal that Ameri[C]redit uses the court system almost exclusively against its customers in seeking default judgments," discovery revealed that, while AmeriCredit did not proceed in arbitration to obtain a deficiency against a borrower in the four years prior to the complaint, AmeriCredit also filed *no* lawsuits seeking deficiencies during the same period, and obtained *no* default judgments. Thus, plaintiffs' characterization of AmeriCredit as a company which *required* the consumers with which it dealt to sign an arbitration clause, which AmeriCredit would then use whenever sued by the consumers, *while it continued to freely use the court system against them*, was placed into question.

### 5. *Plaintiffs' Opposition to the Motion to Compel Arbitration*

After completion of discovery, plaintiffs filed their opposition to the motion to compel arbitration. They argued that the arbitration clause with class action waiver was unconscionable as an exculpatory clause. Simply put, plaintiffs contended that the arbitration clause and class action waiver would, if enforced, work a complete waiver of plaintiffs' rights under the ASFA, as the only economically feasible method of enforcing those rights was a class action.

The opposition was supported by a declaration of plaintiff Arguelles-Romero, which was intended to establish procedural unconscionability by setting forth the circumstances under which he signed the contract. However, the declaration did not indicate the date of execution. (See Code Civ. Proc., § 2015.5, subd. (b) [a declaration under penalty of perjury of the laws of Cal. must include the date it is signed].) The trial court rejected the declaration on this basis.[6]

---

[6] The declaration also indicated that Arguelles-Romero speaks only Spanish, which raised the question as to how he executed a declaration in English. When this was called to plaintiffs' attention, they submitted the declaration of their counsel's paralegal, who stated that he prepared a declaration in Spanish for Arguelles-Romero, and that the English version filed "is an accurate translation of the Spanish declaration Arturo Arguelles-Romero reviewed." The

The opposition was also supported by declarations of three attorneys who indicated that, based on their knowledge and experience, no attorney would pursue plaintiffs' claims on an individual basis, as it would not be economically feasible to do so. In this writ proceeding, plaintiffs argue that these declarations were uncontroverted and therefore should be considered dispositive. These declarations, however, appear to this court to be largely speculative, and unworthy of anything but the most minimal weight. While all three declarations are from experienced consumer attorneys, only one of the three attorneys claims any experience in postrepossession notice cases. With a single exception, each of the attorneys discusses the high costs of representing an individual plaintiff against a corporate defendant in *litigation*, with no mention made of the presumably lower costs in arbitration. For example, the attorneys each claim that corporate defendants routinely engage in substantial motion practice at the outset of the case—the costs of opposing which would quickly deplete any potential recovery. Yet we are concerned with an individual *arbitration*, where pretrial discovery and motion practice may be quite limited.[7] Moreover, when it comes to the issue of whether the availability of statutory attorney fees under the ASFA may create a financial incentive for attorneys to pursue such cases, the attorney declarations are in disagreement. The two attorneys without experience in ASFA cases stated that "Courts [are] reluctant to award attorney fees requests, especially fee requests that far exceed the recovery of the plaintiff." In contrast, the one attorney

---

trial court accepted this as sufficient. However, the trial court rejected Arguelles-Romero's declaration as undated. Nonetheless, the court indicated that if it had accepted the declaration, it would not affect the ultimate ruling. In their writ petition, plaintiffs concede that the declaration is undated, but suggest that this court can nonetheless consider it as the paralegal's declaration indicates approximately when Arguelles-Romero signed his declaration. We decline to do so. The issue is not whether the court knows approximately when the declaration was signed; the issue is that, for an unsworn declaration to be considered properly subscribed under penalty of perjury, it must "state[] the date of execution." (Code Civ. Proc., § 2015.5.)

[7] One of the three attorneys declared, "The lawyers in my firm have both defeated and been defeated by Petitions to Compel Mandatory Binding Arbitration in California state courts. In the cases where the court has compelled binding arbitration, none of the supposed benefits of binding arbitration have been realized. Cases being heard by private judges are not heard any sooner than cases being prosecuted under the Trial Court Delay Reduction Act in the Superior Court of California. [Citation.] Enforcement of discovery is difficult. Overall cost is higher, not lower." As the law compels enforcement of valid arbitration agreements (*Sanchez v. Western Pizza Enterprises, Inc.* (2009) 172 Cal.App.4th 154, 165 [90 Cal.Rptr.3d 818]), this attorney's opinion that there are no benefits to arbitration is wholly irrelevant to the issue before the court. The attorney's declaration also makes no attempt to connect the anecdotal experience of attorneys at her firm to arbitrations regarding the validity of postrepossession notices under the ASFA. Indeed, in a case such as this one, where the authenticity of the postrepossession notice and deficiency notice is undisputed, it is unclear exactly what sort of discovery plaintiffs would need to conduct in an individual arbitration.

with experience in ASFA cases declared that, in his experience, *"many* Courts are reluctant to award *full* attorney fees *when* the actual recovery is small and fee requests . . . far exceed the recovery."[8] (Italics added.) Thus, on the key issue of attorney fees, the declarations are not undisputed; they are contradictory, with the one attorney with ASFA experience implicitly unwilling to declare that courts are reluctant to award statutory attorney fees. Moreover, none of the attorneys indicated whether *arbitrators* are reluctant to do so.

### 6. *Hearing and Ruling*

The trial court held a lengthy hearing on the motion. On the issue of unconscionability, the trial court found this case governed by *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (*Discover Bank*). We will discuss *Discover Bank* at length below. The trial court, however, concluded that the class action waiver in the arbitration clause was not unconscionable, either under the general doctrine of unconscionability or its specific application in *Discover Bank*. While the trial court concluded that plaintiffs had established *procedural* unconscionability in the execution of the contract, there was no *substantive* unconscionability. The court therefore granted the motion to compel individual arbitration.

### 7. *Appeal and Writ Petition*

On August 27, 2009, plaintiffs filed a notice of appeal from the order compelling arbitration. On September 25, 2009, AmeriCredit moved to dismiss the appeal as taken from a nonappealable order. On September 28, 2009, plaintiffs filed a petition for writ of mandate, challenging the same order. We granted the motion to dismiss the appeal, and issued an order to show cause in the writ proceeding.

### *ISSUE PRESENTED*

The sole issue presented by this writ petition is whether the trial court erred in compelling individual arbitration. As we explain below, this requires consideration of two Supreme Court cases discussing the enforceability of class action waivers: *Discover Bank* and *Gentry v. Superior Court* (2007) 42 Cal.4th 443 [64 Cal.Rptr.3d 773, 165 P.3d 556] (*Gentry*).

### *DISCUSSION*

### 1. *Standard of Review*

"California law, like federal law, favors enforcement of valid arbitration agreements." (*Armendariz v. Foundation Health Psychcare Services, Inc.*

---

[8] We note that the ASFA attorney fees provision does not provide for an award of "full" fees, but only "[r]easonable" fees. (Civ. Code, § 2983.4.)

(2000) 24 Cal.4th 83, 97 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).) Under both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the voiding of any contract. (*Id.* at p. 98 & fn. 4.) ■ Unconscionability is a recognized contract defense which can defeat an arbitration agreement. (*Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1099 [118 Cal.Rptr.2d 862].)

■ " 'The [movant] bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the [motion to compel] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. [Citation.]' " (*Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1282 [73 Cal.Rptr.3d 395].) The party opposing arbitration has the burden of proving that the arbitration provision is unconscionable. (*Szetela v. Discover Bank, supra*, 97 Cal.App.4th at p. 1099.) However, whether an arbitration provision is unconscionable is ultimately a question of law. (*Bruni v. Didion, supra*, 160 Cal.App.4th at p. 1283.)

" 'In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination. [Citation.]' [Citation.]" (*Bruni v. Didion, supra*, 160 Cal.App.4th at p. 1282.) We will uphold the trial court's resolution of disputed facts if supported by substantial evidence. (*Ibid.*) When the trial court makes no express findings, we will infer that the trial court made every implied finding necessary to support the order compelling arbitration, and review those implied findings for substantial evidence. (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1567 [98 Cal.Rptr.3d 743].)[9]

### 2. Discover Bank, Gentry, *and Exculpatory Class Action Waivers*

The confusion in this case arises because plaintiffs seek to combine the doctrines set forth in *Discover Bank* and *Gentry* into a single test for *unconscionability*. Yet while *Discover Bank* is a case about unconscionability, the rule set forth in *Gentry* is concerned with the effect of a class action waiver on unwaivable statutory rights *regardless of unconscionability*. (*Sanchez v. Western Pizza Enterprises, Inc., supra*, 172 Cal.App.4th at p. 172.) While, in certain circumstances, a class action waiver may be both unconscionable and violate the rule of *Gentry*, the Supreme Court has

---

[9] As discussed below, a different standard of review applies to claims under *Gentry*.

established two separate tests which should be considered separately. We discuss the underpinnings of each case.

### a. *Discover Bank*

■ Unconscionability in California is comprised of two parts, procedural unconscionability and substantive unconscionability. (*Discover Bank, supra*, 36 Cal.4th at p. 160.) Both must be present for a contract term to be considered unconscionable, although there is a sliding scale. "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra*, 24 Cal.4th at p. 114.)

*Discover Bank* involved allegations of an unconscionable class action waiver. Although the class action waiver appeared in an arbitration agreement, the Supreme Court's analysis was equally applicable to waivers of class action litigation in court. (*Discover Bank, supra*, 36 Cal.4th at p. 153.) In the facts giving rise to the action, the plaintiff alleged that the defendant bank had represented to its customers that a payment would be considered timely if received by a certain date, but actually considered the payment late, and assessed a $29 fee, if the payment was received after 1:00 p.m. on that date. (*Id.* at pp. 152, 154.) As to the class action waiver, the plaintiff had never actually signed an agreement including the term. Instead, the defendant bank had added an arbitration clause and class action waiver to the standard terms of its agreement, and notified its customers of the change by means of a "bill stuffer" which informed the customers that if they continued using their accounts, they would be deemed to have consented to the new terms. (*Id.* at pp. 153–154.) When the plaintiff attempted to pursue a class action or class arbitration, the defendant bank argued that the class action waiver provision barred such a procedure. The plaintiff argued that the class action waiver was unconscionable.

The Supreme Court first concluded that "when a consumer is given an amendment to its cardholder agreement in the form of a 'bill stuffer' that he would be deemed to accept if he did not close his account, an element of procedural unconscionability is present." (*Discover Bank, supra*, 36 Cal.4th at p. 160.) The court then turned to the issue of substantive unconscionability, and concluded that class action waivers "may . . . be substantively unconscionable inasmuch as they may operate effectively as exculpatory contract clauses that are contrary to public policy." (*Id.* at p. 161.)

The court concluded that the class action waiver before it was such a clause. The court reasoned as follows. The amount at issue was $29, an amount much too small to justify the pursuit of an individual action or arbitration,[10] thereby rendering a class action the only effective way to obtain redress. Moreover, the court was concerned that an unscrupulous defendant, *knowing* that no individual would proceed against it for $29, could obtain that amount from millions of customers, and reap a handsome profit, safe in the knowledge that the class action waiver would prevent it from answering for its fraud. (*Discover Bank, supra*, 36 Cal.4th at pp. 159–161.) A key part of the court's legal analysis was Civil Code section 1668, which provides, " 'All contracts *which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury* to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.' "[11] (*Discover Bank, supra*, 36 Cal.4th at p. 161.) In other words, the *Discover Bank* court was concerned with the situation where it was alleged that the defendant, by means of the procedurally unconscionable class action waiver, had essentially given itself a license to defraud numerous individuals of very small amounts of money. Believing such license to be, in effect, an improper exculpatory contract, the court concluded it was unconscionable. (*Ibid.*)

■ The *Discover Bank* court did not set forth a three-part test for unconscionability of a class action waiver in a consumer contract,[12] although it is clear that the presence of three elements—(1) adhesion contract; (2) the dispute predictably involves small amounts of damages; and (3) allegations that the defendant has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money—was

---

[10] The court found that this was true even if attorney fees are potentially available to the prevailing party. (*Discover Bank, supra*, 36 Cal.4th at p. 162.) In other words, even if the plaintiff's attorneys were likely to be reimbursed, no rational individual would expend the time and effort necessary to recover $29 through litigation or arbitration.

[11] When an exculpatory contract is in violation of Civil Code section 1668, the contract is considered void as against public policy. (See, e.g., *Olsen v. Breeze, Inc.* (1996) 48 Cal.App.4th 608, 619 [55 Cal.Rptr.2d 818].) In cases of contracts exempting a party from liability for its own *negligence*, the contract violates Civil Code section 1668 only if it implicates the public interest. (*Olsen, supra*, at p. 619.) Some of the factors which determine whether the public interest is affected include the relative bargaining strength of the parties and whether the contract is adhesive (*Health Net of California, Inc. v. Department of Health Services* (2003) 113 Cal.App.4th 224, 236 [6 Cal.Rptr.3d 235])—in other words, factors surrounding a determination of procedural unconscionability. However, a finding of implication of public interest does not appear necessary to void as violative of public policy a contract exempting a party for liability from its own *fraud*. (See *Baker Pacific Corp. v. Suttles* (1990) 220 Cal.App.3d 1148, 1153–1154 [269 Cal.Rptr. 709].)

[12] *Discover Bank*'s analysis was limited to the context of consumer contracts. In the context of a consumer contract, a class action waiver, even if technically bilateral, is effectively one-sided, as companies rarely bring class actions against their customers. (*Discover Bank, supra*, 36 Cal.4th at p. 161.)

necessary to its analysis. (*Discover Bank, supra,* 36 Cal.4th at pp. 162–163.) For this reason, some federal cases applying *Discover Bank* have concluded that it established a three-part inquiry for determining the unconscionability of a class action waiver under California law. (See, e.g., *Shroyer v. New Cingular Wireless Services, Inc.* (9th Cir. 2007) 498 F.3d 976, 983; *In re Apple & AT & TM Antitrust Litigation* (N.D.Cal. 2008) 596 F.Supp.2d 1288, 1298; *Stiener v. Apple Computer, Inc.* (N.D.Cal. 2008) 556 F.Supp.2d 1016, 1024.) This is not strictly accurate. While it is true that the presence of the three *Discover Bank* factors is sufficient to *establish* the unconscionability of a class action waiver, the Supreme Court did not hold that class action waivers are unconscionable *only* when those three elements are present. (*Cohen v. DIRECTV, Inc.* (2006) 142 Cal.App.4th 1442, 1451 [48 Cal.Rptr.3d 813].) A court is instead required to consider whether, to the extent the elements are not present, the facts might still compel the conclusion that the class action waiver is unconscionable. (*Ibid.*)

### b. *Gentry*

In contrast, what we will call "the rule of *Gentry*" is not a rule of unconscionability. Indeed, the absence of procedural unconscionability is not relevant to striking a class action waiver as violative of the rule of *Gentry*.[13] (*Gentry, supra,* 42 Cal.4th at p. 451.)

The seeds for the rule of *Gentry* were planted not in *Discover Bank*, but in *Armendariz, supra,* 24 Cal.4th 83. *Armendariz* considered whether a plaintiff could be compelled to arbitrate discrimination claims brought under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.). The Supreme Court began with the premise that FEHA rights are unwaivable. (*Armendariz, supra,* 24 Cal.4th at p. 112.) The court agreed that, as a general matter, assuming the arbitral forum is adequate, an agreement to arbitrate a nonwaivable statutory claim does not waive the claim, it simply submits its resolution to another forum. (*Id.* at pp. 98–99.) However, if the arbitral forum is *not* adequate, an agreement to arbitrate a nonwaivable statutory claim may, in fact, improperly compel the claimant to forfeit his or her statutory rights. (*Id.* at pp. 99–100.) The *Armendariz* court then considered the minimum requirements that any arbitral forum would have to meet so that forcing a party to pursue nonwaivable statutory claims in that forum would still enable the party to vindicate his or her rights. (*Id.* at p. 113.) These requirements included arbitrator neutrality, the provision of adequate

---

[13] In actuality, there were two parts to the holding of *Gentry*—the rule of *Gentry*, which we now discuss, and an unconscionability discussion. As to the latter, the Supreme Court concluded the Court of Appeal had erred in determining that the arbitration agreement at issue was free from procedural unconscionability, and therefore remanded for a determination of substantive unconscionability. (*Gentry, supra,* 42 Cal.4th at pp. 470–473.)

discovery, a written decision that will permit a limited form of judicial review, and certain limitations on the costs of arbitration. (*Id.* at pp. 90–91.)

The question that arose in *Gentry* was whether the right to a *class arbitration* should also be included among the *Armendariz* protections as a necessary minimum requirement for the arbitration of a nonwaivable statutory right.[14] The Supreme Court concluded that it should, "at least in some cases." (*Gentry, supra,* 42 Cal.4th at p. 450.)

*Gentry* involved a class of employees who alleged that their employer had improperly characterized them as exempt and therefore did not pay them overtime. (*Gentry, supra,* 42 Cal.4th at p. 451.) The statutory right to recover overtime is unwaivable. (*Id.* at p. 455.) The Supreme Court then concluded that, in wage and hour cases, a class action waiver would frequently have an exculpatory effect and would undermine the enforcement of the statutory right to overtime pay. (*Id.* at p. 457.) The court identified several factors which, if present, could establish a situation in which a class action waiver would undermine the enforcement of the unwaivable statutory right. These factors included: (1) individual awards "tend to be modest" (*id.* at p. 457); (2) an employee suing his or her current employer is at risk of retaliation (*id.* at p. 459); (3) some employees may not bring individual claims because they are unaware that their legal rights have been violated (*id.* at p. 461); and (4) even if some individual claims are sizeable enough to provide an incentive for individual action, it may be cost effective for an employer to pay those judgments and continue to not pay overtime—only a class action can compel the employer to properly comply with the overtime law (*id.* at p. 462).

▇ *Gentry* did not establish an absolute four-part test for the enforceability or unenforceability of class action waivers. Instead, "when it is alleged that an employer has systematically denied proper overtime pay to a class of employees and a class action is requested notwithstanding an arbitration agreement that contains a class arbitration waiver, the trial court must consider the factors discussed above: the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' right to overtime pay through individual arbitration. If it concludes, based on these factors, that a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration, and finds that the disallowance of the

[14] However, as in *Discover Bank*, the court in *Gentry* stated that its holding applied to class action waivers in general, whether in litigation or arbitration. (*Gentry, supra,* 42 Cal.4th at p. 465.)

class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations, it must invalidate the class arbitration waiver to ensure that these employees can 'vindicate [their] unwaivable rights in an arbitration forum.' [Citation.]" (*Gentry, supra*, 42 Cal.4th at p. 463.)

The *Gentry* court remanded to the trial court to determine "whether, in this particular case, class arbitration would be a significantly more effective means than individual arbitration actions of vindicating the right to overtime pay of the group of employees whose rights to such pay have been allegedly violated by [the defendant]." (*Gentry, supra*, 42 Cal.4th at p. 466.) As this determination is within the discretion of the trial court, and is similar to the inquiry made on a motion for class certification, we have previously held that the standard of review for a *Gentry* determination is abuse of discretion.[15] (*Sanchez v. Western Pizza Enterprises, Inc., supra*, 172 Cal.App.4th at p. 169.)

    c. *Similarities and Differences Between* Discover Bank *and the Rule of* Gentry

■ *Discover Bank* and the rule of *Gentry* are, in the words of the Supreme Court, both applications "of a more general principle: that although '[c]lass action and arbitration waivers are not, in the abstract, exculpatory clauses' [citation], such a waiver can be exculpatory in practical terms because it can make it very difficult for those injured by unlawful conduct to pursue a legal remedy." (*Gentry, supra*, 42 Cal.4th at p. 457.) One must be careful, however, not to attempt to distill a rule that *any* time a class action waiver is, in practical terms, exculpatory, the waiver cannot be enforced. This is so because some rights, even statutory ones, can be waived. (*Armendariz, supra*, 24 Cal.4th at p. 100.) *Discover Bank* and *Gentry* considered circumstances in which those waivers would not be upheld—either because they were procedurally and substantively unconscionable (*Discover Bank*), or because they were likely to result in a waiver of unwaivable statutory rights (*Gentry*).

While *Discover Bank* and *Gentry* were applications of the same general principle, it is also apparent that they involved different legal theories. *Discover Bank* is based on unconscionability, which is a legal determination subject to de novo review, while *Gentry* is based on whether a class arbitration (or action) is a significantly more effective practical means of vindicating unwaivable statutory rights, which is a discretionary determination subject to abuse of discretion review.

---

[15] See footnote 9, *ante*.

It is clear, however, that in the appropriate case, both doctrines may apply. Surely, a case can be envisioned in which an employer, by means of a contract of adhesion, imposes a class action waiver on its low-wage-earning employees as part of a scheme to intentionally defraud each employee of a very small amount of pay to which the employee is statutorily entitled (pursuant to a nonwaivable statute). The class action waiver would be unconscionable as largely indistinguishable from the circumstances considered in *Discover Bank*. But the circumstances might also justify a determination, under the rule of *Gentry*, that a class action is a significantly more effective practical means of vindicating the nonwaivable statutory rights.

Despite the potential overlap of the two doctrines, care should be taken not to conflate them unnecessarily. For example, *Discover Bank* found substantive unconscionability where, in addition to allegations of fraud, "disputes between the contracting parties predictably involve small amounts of damages." (*Discover Bank, supra*, 36 Cal.4th at p. 162.) The rule of *Gentry* requires courts to consider, among other factors, whether individual awards "tend to be modest." (*Gentry, supra*, 42 Cal.4th at p. 457.) Both cases thus found the amount at issue to be a relevant consideration. But just because an amount is sufficiently "modest" to, in combination with other factors, invalidate a class action waiver under the rule of *Gentry* does not necessarily mean the same amount is a "small amount[] of damages" sufficient to, in combination with an allegation of fraud, mandate a finding of substantive unconscionability under *Discover Bank*. In both situations, the ultimate inquiry is whether the class action waiver would, in effect, work as an exculpatory clause. But the amount of money at issue which would make pursuit of an individual action an economically viable proposition is very likely to be different when, for example, the plaintiff risks employer retaliation than when the plaintiff is a consumer with no ongoing relationship with the defendant.[16]

■ Thus, the proper course of action is for a court to consider each test on its own merits, as it applies to the specific circumstances of a case. If the plaintiff can establish procedural unconscionability, the court should consider

---

[16] The amount of the late fee at issue in *Discover Bank* was $29 (*Discover Bank, supra*, 36 Cal.4th at p. 154); the amount of the overtime claims at issue in *Gentry* was assumed to be approximately $6,000 (*Gentry, supra*, 42 Cal.4th at p. 458), although the court noted that even an individual claim as large as $37,000 would not necessarily be a sufficient incentive to pursue an individual unpaid overtime action, given the expense and practical difficulties involved in pursuing such a suit (*ibid.*, citing *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 745 [9 Cal.Rptr.3d 544]). One cannot then argue that allegations that a defendant intentionally deprived numerous individuals of $37,000 each is a scheme to deliberately cheat large numbers of consumers out of "individually small sums of money" within the meaning of *Discover Bank*. That, in the circumstances of an unpaid overtime action, a $37,000 claim is not necessarily a sufficient incentive to pursue an individual claim does not render $37,000 a "small sum[] of money."

whether, under the circumstances alleged, the class action waiver is substantively unconscionable as a matter of law. If the plaintiff can establish a nonwaivable statutory right is at issue, the court should make a discretionary determination under the rule of *Gentry*.

In this case, plaintiffs argued only unconscionability, although they attempted to do so by combining some elements of the unconscionability analysis of *Discover Bank* with some of the factors considered in the discretionary determination in the rule of *Gentry*. But the rule of *Gentry* factors are not, as plaintiffs argue, "indicia of unconscionability." They may be considered, in the proper circumstances,[17] but the rule of *Gentry* did not expand the *Discover Bank* analysis to include all of the *Gentry* factors—it simply established a different, discretionary, determination. In this case, the trial court performed an unconscionability analysis, but (as it was never expressly asked to do so) did not perform an analysis under the rule of *Gentry*. As we explain below, the trial court did not err in concluding that plaintiffs failed to establish the class action waiver is unconscionable as a matter of law. However, as plaintiffs relied on the factors from the rule of *Gentry*, we will remand this matter for the trial court to perform a discretionary determination under the rule of *Gentry*.

### 3. *Law of Unconscionability Applied to the Facts in This Case*

As discussed above, unconscionability involves both procedural and substantive unconscionability; both must be present. It is the plaintiff's burden to introduce sufficient evidence to establish unconscionability.

In this case, the trial court found that procedural unconscionability had been established as the contract was a form contract of adhesion, presented to plaintiffs on a take-it-or-leave-it basis. The dispute in this case surrounds the evidence of substantive unconscionability.

■ "Substantive unconscionability addresses the fairness of the term in dispute. Substantive unconscionability 'traditionally involves contract terms

---

[17] In *Olvera v. El Pollo Loco, Inc.* (2009) 173 Cal.App.4th 447, 457 [93 Cal.Rptr.3d 65], we used some of the factors from the rule of *Gentry* to bolster our finding of substantive unconscionability of a class action waiver. We were not, by this, implying that the presence of one or more of the *Gentry* factors *mandates* a finding of unconscionability as a matter of law. The *Gentry* factors are to be considered as part of an overall inquiry into whether a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees. Clearly, as the *Gentry* factors are *relevant* to the question of whether a class action is likely to be a more effective means of vindicating the employees' rights, they would also be *relevant* to the question of whether a class action waiver is substantively unconscionable as an improper exculpatory clause under Civil Code section 1668.

that are so one-sided as to "shock the conscience," or that impose harsh or oppressive terms.' " (*Szetela v. Discover Bank, supra*, 97 Cal.App.4th at p. 1100.)

Plaintiffs seek to establish substantive unconscionability under the spirit, if not the precise analysis, of *Discover Bank*. In other words, plaintiffs argue that, as the individual amounts at issue are so small, a class action is the only viable remedy; and that, by imposing a class action waiver on its customers, AmeriCredit has established a scheme by which it can continue attempting to collect deficiencies following faulty postrepossession notices, in violation of public policy.

However, plaintiffs failed to establish that the individual amounts at issue are so small that a class action is the only viable remedy. Plaintiffs argue that the amounts at issue are not the amounts of the deficiencies (which, in plaintiffs' case, exceeds $16,000), but simply the amounts the members of the class have *paid* on the deficiencies, which plaintiffs seek to recover by restitution. We disagree. Plaintiffs seek a declaration that they are not liable for the entire deficiency balance; clearly, it is the amount of that deficiency balance that is at issue.[18] Moreover, even if plaintiffs were correct and the amounts at issue were simply the amounts paid, plaintiffs have failed to establish that these amounts are too small to justify individual actions because plaintiffs have *wholly failed to introduce any evidence as to the size of the amounts*. Plaintiffs never introduced evidence of the amount they paid on the deficiency balance, nor did they offer any general statistics on the amounts generally paid on deficiency balances.[19] In any event, we conclude that the full deficiency balance is the amount at issue, an amount exceeding $16,000. This amount is not so small that individuals would not be willing to spend the time and effort to pursue an individual claim for the amount, particularly when the prospect of an award of statutory attorney fees is also possible. (Civ. Code, § 2983.4; Code Civ. Proc., § 1021.5.) Thus, plaintiffs have not established the prerequisite to their theory of substantive unconscionability—that the claims are so small that a class action is the only viable means of enforcement.[20]

---

[18] Plaintiffs surely would not be satisfied with an order for restitution of the amounts paid if that order permitted AmeriCredit to collect the remainder of the deficiency balance.

[19] Plaintiffs attempt to rely on the declarations from three attorneys who state that they would not represent plaintiffs on an individual basis, and they believe other attorneys would decline to do so as well. But the attorney declarations are based solely on the attorneys' review of the complaint, which alleges only that plaintiffs "have paid a portion of this deficiency balance."

[20] Plaintiffs suggest that, even if, in theory, $16,000 is a large enough amount at issue to support an individual action, no attorney would represent them on an individual basis because, even if the claim is fully successful, that amount would not be *recovered*, and there is no guarantee that an attorney would be fully compensated. Plaintiffs rely on the attorney

With a showing only of procedural unconscionability, and no evidence of substantive unconscionability,[21] we conclude that the class action waiver is not unconscionable and the trial court correctly so ruled.

Although plaintiffs do not specifically argue that the class action waiver should be invalidated under the rule of *Gentry*, they argue that several of the circumstances present in *Gentry* should weigh in favor of a finding of substantive unconscionability in this case. For example, they argue that the bulk of the individuals against whom AmeriCredit asserted a deficiency balance after a statutorily inadequate postrepossession notice likely had no idea that AmeriCredit was violating their statutory rights. While, under the circumstances of this case, this factor does not establish unconscionability of the class action waiver; it is a factor indicating that a class action *may* be a preferable means of vindicating the statutory rights at issue. As plaintiffs opposed the motion to compel arbitration by relying on several of the elements from the rule of *Gentry*, we believe the proper course of action is for the trial court upon remand to exercise its discretion to determine whether the class action waiver should be considered unenforceable under that rule.

---

declarations to support this conclusion. The trial court found the attorney declarations unpersuasive and we agree. First, two of the three attorney declarants are unfamiliar with ASFA postrepossession notice litigation; second, none of the attorney declarants are familiar with ASFA arbitration; and, third, statutory attorney fees are available for violations of the ASFA, and the one attorney with experience in ASFA litigation would not state that reasonable attorney fees were not generally awarded. Additionally, we are troubled, to some degree, that attorneys are seeking to defeat a class action waiver by stating that they would not represent the plaintiffs on an individual basis. There is an element of self-fulfilling prophecy to these declarations; it cannot be the law that attorneys who may specialize in representing consumers can control whether a class action waiver is unenforceable simply by refusing to represent plaintiffs on an individual basis.

[21] In their reply brief, plaintiffs argue, for the first time, that there is an additional basis on which the contract may be found substantively unconscionable. Specifically, they argue the arbitration clause is not bilateral. Plaintiffs state, "The contract gives the creditor the right to exercise self-help (repossession) and to sue to collect claimed deficiencies, but does nothing to protect the consumer from suit by collection agents to whom such debts are customarily sold." This argument is wholly contradicted by the terms of the arbitration clause itself, which states, in pertinent part, "EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL." The contract goes on to provide, "You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit." Moreover, the contract provides that "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO." It is apparent that, contrary to plaintiffs' assertion, if AmeriCredit were to sue a debtor to obtain a deficiency, as long as that deficiency exceeded the jurisdictional limit of small claims court, the debtor could compel arbitration. Thus, the arbitration clause is clearly bilateral, and not unconscionable.

## *DISPOSITION*

The petition for writ of mandate is granted and the matter is remanded with directions. The trial court is directed to vacate its order granting the motion to compel individual arbitration and to reconsider the motion under the rule of *Gentry* and in a manner not inconsistent with the views expressed herein. The parties shall bear their own costs.

Kitching, J., and Aldrich, J., concurred.

On May 20, 2010, the opinion was modified to read as printed above.