Filed 1/8/15  Hernandez v. W.R. Thomas CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| WENDY HERNANDEZ et al., | D064036 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. ECU06984) |
| W.R. THOMAS, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Imperial County, Jeffrey B. Jones, Judge.  Affirmed.

The Hanson Law Firm, John W. Hanson and Elisa M. Swanson, for Plaintiffs and Appellants.

Flynn & Flynn and Gregory E. Flynn; Stephen M. Hogan, for Defendants and Respondents.

Wendy Hernandez and her mother, Sandra Hernandez, bought a used car from Direct Auto Plaza.[1]  Less than one year later, they sued Direct Auto asserting contract, tort, and statutory claims arising from the sale.  On the statutory causes of action, plaintiffs sought to certify a class and requested their appointment as class representatives.

Direct Auto responded by petitioning to compel arbitration based on an arbitration provision in the parties' purchase agreement.  The arbitration provision contained a class action waiver.  Plaintiffs objected to the petition, asserting the arbitration clause was not enforceable because various provisions were unconscionable under California law.  After considering the parties' written submissions and conducting an evidentiary hearing, the court rejected the unconscionability defense and ordered the matter to arbitration.

On appeal, plaintiffs contend the arbitration provision is procedurally and substantively unconscionable under California law.  The California Supreme Court is currently considering an identical unconscionability challenge to the identical arbitration provision in the same industry-drafted automobile sales contract.  (*Sanchez v. Valencia Holding Co.*, LLC (2011) 201 Cal.App.4th 74, review granted Mar. 21, 2012, S199119 (*Sanchez*).)  During the almost three years that *Sanchez* has been pending, the high court

_____

[1]     Direct Auto Plaza is a dba of the defendant, W.R. Thomas, Inc.  We shall refer to this defendant as Direct Auto.  When referring to plaintiffs individually, we will use their first names to avoid confusion.

has granted and held numerous petitions for review of Court of Appeal decisions addressing similar (if not identical) challenges to the identical arbitration provision.[2] These intermediate courts have reached conflicting conclusions based on several different theories and rationales. The *Sanchez* case also raises the broader question of the impact of the United States Supreme Court's Federal Arbitration Act (FAA) preemption decision, *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. __ [131 S.Ct. 1740] (*Concepcion*), on unconscionability analysis under California law.

As reflected by the number of cases pending before the California Supreme Court and the widely divergent views of these courts, the proper evaluation of an unconscionability challenge to FAA arbitration provisions is unsettled. We nonetheless are presented with the issue and must resolve the matter under current California law. (See *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109 (*Sonic II*); *Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (2012) 55 Cal.4th 223 (*Pinnacle*).) Applying this law to the evidentiary record before us and in light of the specific appellate arguments asserted by the parties, we conclude the parties' arbitration

---

[2] These cases include: *Gillespie v. Svale Del Grande, Inc.*, review granted July 9, 2014, S218704; *Cheroti v. Harvey & Madding, Inc.*, review granted June 25, 2014, S218724; *Gonzalez v. Metro Nissan of Redlands*, review granted November 26, 2013, S214121; *Vargas v. SAI Monrovia B, Inc.* (2013) 216 Cal.App.4th 1269, review granted August 21, 2013, S212033; *Vasquez v. Greene Motors, Inc.* (2013) 214 Cal.App.4th 1172, review granted June 26, 2013, S210439; *Natalini v. Import Motors, Inc.* (2013) 213 Cal.App.4th 587, review granted May 1, 2013, S209324; *Flores v. West Covina Auto Group* (2013) 212 Cal.App.4th 895, review granted April 10, 2013, S208716; *Goodridge v. KDF Automotive Group, Inc.* (2012) 209 Cal.App.4th 325, review granted December 19, 2012, S206153; *Caron v. Mercedes-Benz Financial Services USA LLC* (2012) 208 Cal.App.4th 7, review granted October 24, 2012, S205263.

3

agreement contains certain elements of procedural and substantive unconscionability, but these elements are insufficient to preclude the enforceability of the arbitration agreement. We thus affirm the order.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

In about August 2011, plaintiffs, residents of Washington state, purchased a used 2007 Dodge Caliber from Direct Auto. Although the record is not entirely clear, it appears the purchase price was approximately $15,000. Both plaintiffs signed the sales contract containing an arbitration agreement.

About seven months later, plaintiffs filed a complaint against Direct Auto. They alleged that Direct Auto failed to: (1) pay off a preexisting lien on the vehicle; (2) complete the transfer of registration to permit them to register the vehicle in Washington state; (3) "smog the . . . vehicle" as required by applicable law; and (4) properly identify their $500 down payment on the sales contract. They also alleged that at the time of the sale, Direct Auto was aware Wendy had mental health issues and her mother Sandra was physically disabled, and both plaintiffs received disability income.

---

[3]    During the past several years, different panels of this court have reached conclusions on unconscionability challenges to this same arbitration provision. To the extent the conclusions and/or reasoning have differed or changed over this time, our views continue to evolve as we have the benefit of additional appellate decisions in this area and the benefit of the California Supreme Court's continuing refinement of our state's unconscionability analysis under the FAA. Additionally, each case must be decided on its own factual record.

4

Plaintiffs alleged numerous causes of action, including: (1) negligent and intentional misrepresentation; (2) violation of the Consumers Legal Remedies Act (seeking injunctive relief only) (Civ. Code, § 1750 et seq.); (3) breach of warranty; (4) violation of the Rees-Levering Motor Vehicle Sales and Finance Act (Civ. Code, § 2981 et seq.); and (5) violation of the Unfair Business Practices Act (Bus. & Prof. Code, § 17200). Plaintiffs sought to certify a class on some of their factual allegations contained in certain causes of action. Specifically, they sought to represent a class of Direct Auto customers whose down payments were not adequately identified on the sales contract and/or whose vehicles did not receive a smog certification before the sale.

Direct Auto moved to compel arbitration. In support Direct Auto submitted a copy of the parties' sales contract containing the arbitration agreement. The contract—an industry-drafted preprinted purchase agreement—is a single sheet about 26 inches long with numerous provisions in small print on the front and back side. The arbitration provision is located on the back of the agreement, along with numerous other provisions, and is outlined in black lines, as are several other provisions. The arbitration provision is printed in about 8-point type. Both plaintiffs signed the contract on about 10 places on the front side, but there are no signatures or initials by either plaintiff on the back of the contract.

The arbitration provision reads as follows:

"ARBITRATION CLAUSE
PLEASE REVIEW-IMPORTANT-AFFECTS YOUR LEGAL RIGHTS

"1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

5

"2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

"3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

"Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum . . . (www.arbforum. com), the American Arbitration Association . . . (www.adr.org), or any other organization that you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

"Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside. . . . We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment

6

of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

"You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable."

Plaintiffs opposed the motion to compel arbitration, arguing the arbitration clause was procedurally and substantively unconscionable and therefore unenforceable. In support, they submitted their own declarations and the declarations of their counsel. In their declarations, each plaintiff stated the sales contract was presented on a take-it-or-leave-it-basis, and there was no discussion of the arbitration clause and they were unaware there was such a clause in the contract. Wendy said they negotiated with the salespeople solely in Spanish, but were never given a contract in Spanish. Wendy also said:

> "My mother and I are both disabled and live off our SSI. I have long-term mental health issues, and have been under a psychiatrist's care for over 10 years for schizophrenia and anxiety disorder . . . . We were both confused and exhausted by the over five hours we had to spend at the dealership. Except for a bag of chips, I was without food. . . . The dealership personnel pushed us to sign the papers and we did not have a fair chance to understand what was on them. . . .

> "The finance person told me to sign at various places on the front of the contracts. There were numerous other contracts and papers to be signed at that time. No one . . . ever discussed an arbitration clause with me . . . I did not know what an arbitration even was until my

7

attorney told me the dealership is trying to force us out of court and into arbitration. There was nothing to sign on the back, and the dealer did not turn it over. I would never have given up my rights to court and a judge and jury, or ever agree to expensive costs, had [I] known and had a choice."

Sandra similarly stated:

"I am disabled and live off SSI. I live with my daughter [Wendy] who helps take care of me. I have mental and physical health issues: severe arthritis, high blood pressure, diabetes, and thyroid problems . . . . The day they sold us the vehicle, we were both confused and exhausted, spending five hours at the dealership. We were there until late, and they were closing up when we could finally leave. I speak and read no English, but was never given a copy of the contract in Spanish. . . .

"The finance person had me sign places on the front of the contracts, and I did what I was told. Nobody at the dealership ever mentioned anything about arbitration. . . . I would never have given up my rights to court and a judge and jury, or ever agree to expensive costs, if I had a choice or was told about it."

In his declaration, plaintiffs' counsel stated that based on his review of the AAA Web site, there is a minimum administrative fee of $3,350 for a consumer's nonmonetary claim or a claim that exceeds $75,000, and that based on his telephone conversation with an AAA representative, arbitrators' hourly rates range from $250 to $650 per hour in consumer matters.

Based on this evidence,[4] plaintiffs argued the arbitration clause was procedurally unconscionable because they never received a Spanish-translated contract; the agreement was presented to them on a take-it-or-leave-it basis; the arbitration clause was hidden on

---

4     We have summarized only the evidence admitted by the court. The court sustained various evidentiary objections to additional asserted facts, and plaintiffs do not challenge those rulings on appeal.

8

the contract's back side; they were pressured to sign the agreement; and they were not given the specific AAA rules governing the arbitration. They also argued the arbitration clause was substantively unconscionable because: (1) the finality-exception provisions are unfairly one-sided; (2) the arbitration costs are "[p]rohibitively [e]xpensive"; and (3) the exemptions for the repossession remedy and small claims actions are unfairly one-sided.

Direct Auto countered that each of the challenged arbitration provisions apply "even-handedly" and are not unfair to the consumer. With respect to the AAA arbitration costs, Direct Auto presented evidence that Direct Auto would be required to pay $975 and a case service fee of $300 if an arbitration hearing is held in this case, and the consumer would pay no administrative fee. Direct Auto also presented evidence that AAA has administrative fee waiver rules available to limited-income consumers that are consistent with civil procedure statutes. (See Code Civ. Proc., § 1284.3.) Additionally, the evidence showed that although a consumer is responsible for one-half of an arbitrator fee of $750 per day, the consumer may request that the AAA provide a pro bono arbitrator. Based on this evidence, Direct Auto argued that "Arbitration is no more expensive to the parties than going through a court action . . . , [I]t is actually more economical, more efficient and less time consuming for the parties (and witnesses) to the dispute." Direct Auto also argued the class action waiver was enforceable and not unconscionable under *Concepcion, supra*, 131 S.Ct. 1740.

Direct Auto also submitted the declaration of its finance manager, Ruben Guglielmini, who stated:

9

"As a finance manager at Direct Auto Plaza I sit down with the customers to discuss their purchase agreement before they sign it and determine whether they want to purchase any additional items with the car, such as a service contract or theft deterrent device.

"I have reviewed the sales file for Plaintiffs' purchase of their 2007 Dodge Caliber . . . . I was the finance manager on the sale of the [vehicle]. . . . *[At the time] it was my custom and practice to provide the customer with the contract and allow them an opportunity to review it, discuss the terms in the contract with the customer, including the existence of an arbitration agreement in the contract before the customer signs the contract.*

"I provided Plaintiffs with an interest rate for their purchase of the 2007 Dodge Caliber and they told me that they were going to see if they could get a better interest rate themselves. I am informed and believe[d] that they did obtain a better interest rate themselves directly [through] a credit union for the purchase of the [vehicle] . . . ." (Italics added.)

Direct Auto additionally submitted a declaration of David Merrill, Direct Auto's president and general manager. He described the parties' settlement negotiations after plaintiffs purchased the car, and stated that all of these communications were in English and the daughter (Wendy) was a "tough, tenacious and demanding negotiator," who was "questioning, deliberate, unrelenting and demanding about what she wanted, and understood all aspects of the settlement discussions . . . ."[5]

After considering these submissions, the court issued an order scheduling an evidentiary hearing "on the limited issue of whether the negotiations for the purchase of the vehicle were conducted in Spanish or English, and whether [plaintiffs], or either of them, are able to communicate in English language." All parties were represented at the

---

[5] Although Merrill referred to Sandra instead of Wendy in the declaration, the record supports that this was an inadvertent error.

10

ensuing (unreported) hearing. The hearing took approximately 90 minutes, and included examination and cross examination of several witnesses, including both plaintiffs, finance manager Guglielmini, and general manager Merrill. Numerous exhibits were introduced at the hearing. After considering this evidence, the court took the matter under submission.

Several months later, the court issued an order finding the arbitration agreement was not unconscionable and granting Direct Auto's petition to compel arbitration. On the procedural unconscionability issue, the court found the sales contract "is a contract of adhesion" that was presented on a " 'take it or leave it' " basis without any reasonable opportunity to negotiate. But the court found other factors supported the existence of only a "low" level of procedural unconscionability, including that plaintiffs had a choice of buying a used vehicle from a private party rather than from a dealer that used this form contract; the fact that Wendy's signature was immediately below a sentence on the front of the contract referring to the arbitration provision on the back of the form; and the evidence showed the finance manager specifically recalled the negotiations were conducted in English. Under the evidence presented, the court found "the level of surprise [was] minimal or nonexistent."

On the substantive unconscionability issue, the court stated that "[s]ubstantive unconscionability will be found where the contract is so one-sided that it 'shocks the conscience,' " and applied this rule to each of the challenged provisions, including the finality provisions, the arbitration cost provisions, and the exemption for self-help and small claims actions. After conducting this analysis, the court concluded that plaintiffs

11

did not meet their burden to show any of the challenged provisions were substantively unconscionable.

In the Disposition section of the order, the court stated: "The petition is GRANTED. The parties are directed to initiate arbitration with the American Arbitration Association, or such other forum to which they agree, pursuant to the rules of that forum. The present action is STAYED pending completion of arbitration or further order of the court."

## DISCUSSION

### I. *Appealability*

Direct Auto contends the order granting its petition to compel arbitration is not appealable, and we should therefore dismiss the appeal. We conclude the order is appealable under the death knell exception to the one final judgment rule.

Generally, an order compelling arbitration is not appealable. (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 648.) Review of an order must await appeal of the final judgment entered after arbitration. (*Ibid*.) However, an order that "virtually demolishe[s] the action as a class action" and is "tantamount to a dismissal of the action as to all members of the class other than plaintiff" (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699) is appealable under the " 'death knell' " doctrine. (*In re Baycoll* (2011) 51 Cal.4th 751, 757.) Under this doctrine, orders to compel arbitration of a class action complaint are immediately appealable if the order requires the plaintiff to pursue the claims on an individual basis and dismisses the remaining class members. (See *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1288.)

12

Direct Auto argues this rule is inapplicable here because the court did not expressly dismiss the class claims or members, and instead merely ordered the entire matter to arbitration. This argument elevates form over substance. The arbitration provision included an unambiguous class action waiver: "Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action." Under federal and state law, this class action waiver must be enforced. (See *Concepcion, supra*, 131 S.Ct. at pp. 1743-1745; *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 362-366 (*Iskanian*).) Under the terms of the arbitration provision, the arbitrator is required to apply the applicable substantive law and thus would have no discretion to permit a class action in arbitration. This was the position taken by Direct Auto in its papers below. Based on these arguments and the unambiguous record showing a class action waiver, the court's order compelling the matter to arbitration necessarily meant that the arbitrator must consider plaintiffs' claims as individual claims and not on behalf of a class. Because the challenged court order—in substance—eliminated the class members from the action, the order was appealable under the death knell doctrine.

Direct Auto alternatively argues the order is not appealable because the rationale underlying the death knell doctrine does not apply to this case because plaintiffs have the incentive to litigate their individual claims in arbitration. We need not decide whether this argument provides a valid exception to the death knell doctrine. Even if the argument had legal and factual merit, we would conclude that under the particular circumstances here it would be appropriate to treat the appeal as a petition for writ of

13

mandate for purposes of judicial efficiency and to preserve judicial and party resources. (See *Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 767-768.)

II. *Principles Governing Unconscionability Analysis of FAA Arbitration Agreements*

The parties' agreement is governed by the FAA, which preempts state laws inconsistent with the federal act's provisions and objectives. (*Concepcion, supra*, 131 S.Ct. at pp. 1745-1747.) A strong public policy favors the enforceability of FAA arbitration agreements. (*Ibid.*) "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' " (*Id.* at p. 1748.)

Under FAA preemption analysis, the United States Supreme Court disapproved of a California Supreme Court decision holding that class action waivers in consumer form contracts are per se unconscionable and thus unenforceable. (*Conception*, *supra*, 131 S.Ct. at pp. 1746-1753; see *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148.) The court explained that a state law contract defense is unenforceable if it applies only to arbitration or if it derives its meaning from the fact that an agreement to arbitrate is at issue. (*Concepcion, supra*, at pp. 1745-1746.) The court further stated that even if a state law applies evenly to all contracts, the FAA preempts the law if—as applied—it interferes with the "fundamental attribute[s] of arbitration," which include lower costs, greater efficiency, and speed. (*Id.* at pp. 1748, 1751-1753; *Iskanian, supra*, 59 Cal.4th at p. 362; *Sonic II, supra*, 57 Cal.4th at p. 1143.)

After *Concepcion,* the California Supreme Court reaffirmed that California's statutory unconscionability defense remains a potentially viable defense to a petition to compel arbitration (in areas other than class action waivers). (*Sonic II, supra*, 57 Cal.4th

14

at pp. 1142-1143, 1145; see *Pinnacle, supra*, 55 Cal.4th at pp. 234-236, 246.)  Our high court has also confirmed that California unconscionability law continues to require an evaluation of both procedural *and* substantive elements.  (*Pinnacle, supra*, at pp. 246-247.)  "The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.  [Citations.]  Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.  [Citations.]  . . . .  [¶]  Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on ' "a sliding scale." '  [Citation.]  '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'  [Citation.]"  (*Id.* at pp. 246-247.)

The party seeking to compel arbitration has the burden to show a valid arbitration agreement, and the party asserting an unconscionability defense bears the burden of proving all facts necessary to the defense by a preponderance of the evidence.  (*Pinnacle, supra*, 55 Cal.4th at p. 247; *Engalla v. Permanente Medical Group* (1997) 15 Cal.4th 951, 972.)  "In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination."  (*Ibid.*)  " ' "We will uphold the trial court's resolution of disputed facts if supported by substantial evidence.  [Citation.]  Where, however, there is no disputed extrinsic evidence considered by the

15

trial court, we will review its arbitrability decision de novo." [Citation.]' [Citation.]" (*Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1282-1283 (*Bruni*).) The question whether an arbitration provision is unconscionable—based on the undisputed facts or the facts found by the trial court—is ultimately a question of law. (*Ibid.*; *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1250.)

Applying these rules, we consider plaintiffs' contentions that the court erred in concluding that they did not prove their unconscionability defense to the enforceability of the arbitration agreement.

### III. *Procedural Unconscionability*

Procedural unconscionability requires oppression or surprise. " 'Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice.' [Citation.] Surprise is defined as ' "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." ' [Citation.]" (*Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 581.)

The trial court found there was only a "low" level of procedural unconscionability under the circumstances of this case. In reaching this conclusion, the court reviewed conflicting declarations, held an evidentiary hearing, and made credibility determinations. Because the relevant facts were disputed, we are required to uphold the court's factual findings unless they are not supported by substantial evidence. (*Bruni, supra*, 160 Cal.App.4th at pp. 1282-1283.) In conducting this review, we must infer the court made

16

every implied factual finding necessary to support its order and we review those implied findings for substantial evidence.  (*Ibid.*)

Applying these review standards, the evidence supports the court's finding that there was only a low level of oppression and surprise.  Although the industry-drafted purchase agreement is a contract of adhesion, and does not clearly disclose the arbitration agreement by including it in small typeface on the back of a lengthy printed form, there was evidence supporting that the finance manager gave plaintiffs time to review the contract and that he pointed out the existence of the arbitration agreement before plaintiffs signed the contract.  In his declaration, the finance manager stated when plaintiffs purchased their vehicle, his custom and practice was to point out the arbitration provision to buyers before they signed the agreement, and to provide buyers with time to review the entire contract.  The finance manager testified at the evidentiary hearing, and the court had the opportunity to consider his credibility and factors affecting his memory and any possible bias.  The evidence further showed that Wendy, who was acting on behalf of herself and her mother, spoke fluent English, and was fully competent to assert her rights and to understand the terms of the agreement.

Further, a provision on the front side of the contract—which was immediately above Wendy's signature—stated in capital letters (although in substantially smaller type than what appears here):

> "YOU AGREE TO THE TERMS OF THIS CONTRACT.  YOU
> CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT,
> WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT
> AND REVIEW IT.  YOU ACKNOWLEDGE THAT YOU HAVE
> READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE

17

ARBITRATION CLAUSE ON THE REVERSE SIDE.  BEFORE SIGNING BELOW, YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT."

The court found it significant that Wendy signed immediately below this provision *and* that part of her signature physically "intrude[d] on the word 'arbitration' " in the clause.

On this record, the court had a reasonable basis to find that although plaintiffs were the weaker parties in the negotiation, they were not necessarily surprised by the arbitration clause and had a meaningful choice not to purchase the car from Direct Auto if they did not wish to waive their jury trial rights on claims arising from the purchase. Based on the court's factual findings, the court did not err in finding the procedural unconscionability was low in this case.

Plaintiffs' appellate contentions on the procedural unconscionability finding are unpersuasive.  Most important, plaintiffs forfeited their right to challenge the court's factual findings.  When an appellant contends the evidence is insufficient to support a finding, the appellant must set forth in the appellant's opening brief all the evidence material to that finding, including the evidence unfavorable to his or her position. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)  "[T]he appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment." (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1658.)  An appellant must state fully, with transcript citations, the evidence claimed to be insufficient to support the trial court's findings.  (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887.)  "An appellate court will consider the sufficiency of the evidence to support a given finding only after a party tenders such an issue together with a fair summary of the evidence bearing on the

18

challenged finding, particularly including evidence that arguably *supports* it." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409-410.) Unless this is done, the asserted error is deemed waived. (*Foreman & Clark*, at p. 881.)

In this case, plaintiffs did not have a separate factual section in their appellate brief, nor did they make any effort to discuss the facts relevant to the contract negotiations for the vehicle purchase. Contrary to plaintiffs' assertions, the section of their appellate brief entitled "NATURE OF THE ACTION" does not include the facts relevant to the unconscionability issues, and instead contains only a brief description of plaintiffs' complaint allegations. Moreover, we reject plaintiffs' argument there was no need to discuss or describe the relevant facts because our review is purely de novo. As explained above, an appellate court's review of a procedural unconscionability finding is de novo only where there was no extrinsic evidence or the extrinsic evidence was undisputed. (See *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1468; *Bruni, supra*, 160 Cal.App.4th at pp. 1282-1283.) Because the court here resolved factual disputes, we are required to accept the court's factual findings if supported by substantial evidence, and based on those facts consider the extent to which the contract was procedurally unconscionable. Plaintiffs have not set forth a sufficient statement of facts discussing *all* of the *material* evidence, both favorable and unfavorable, to provide this court with a proper basis upon which to consider their procedural unconscionability challenges.

This problem is compounded by plaintiffs' failure to supply a reporter's transcript of the evidentiary hearing. Plaintiffs argue that there was no need to preserve this

19

evidence because the sole purpose of the hearing was to determine the credibility of plaintiffs' claims that the sales negotiations were conducted in Spanish. However, there is nothing on the record showing that this hearing was in fact limited to this issue. The court minutes show the 90-minute hearing pertained to the negotiations leading to the execution of the sales contract and other sales documents, and that at least four witnesses were examined and cross-examined. These negotiations were highly relevant to the procedural unconscionability issue. In the absence of a reporter's transcript of the relevant hearing, we cannot evaluate issues requiring a factual analysis and must presume "the trial court acted duly and regularly and received substantial evidence to support its findings." (*Stevens v. Stevens* (1954) 129 Cal.App.2d 19, 20; see *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003; *Hodges v. Mark* (1996) 49 Cal.App.4th 651, 657.)

We also find unavailing plaintiffs' challenge to the court's discussion of the alternatives to purchasing a vehicle from a commercial car dealer. Although the availability of market alternatives is generally not dispositive in the procedural unconscionability analysis, it can be a relevant factor (among many) in analyzing the degree of oppression arising from the challenged provision in an adhesive contract. (See *Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1320; see also *Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 822-824.) Plaintiffs' arguments that they had no meaningful market alternatives is a factual argument to be resolved by the trier of fact and not by an appellate court. In this regard, the court did not err in taking judicial notice of the commonly understood fact that used cars are sold by private individuals as well as dealers. (Evid. Code, § 452, subd. (g).)

20

Finally, we find unavailing plaintiffs' argument that the court erred in finding a low level of procedural unconscionability because Direct Auto did not attach the specific AAA rules to the contract. We agree with those courts that have found the failure to include these rules to be of minor significance, particularly where plaintiffs do not show that any material portion of those rules were not adequately disclosed in the contract provision. (See *Peng v. First Republic Bank, supra*, 219 Cal.App.4th at pp. 1470-1471; see also *Bigler v. Harker School* (2013) 213 Cal.App.4th 727, 737.)

Plaintiffs did not meet their appellate burden to show the court erred in finding there was only a low level of procedural unconscionability in this case.

## IV. *Substantive Unconscionability*

Plaintiffs next contend the court erred in finding the arbitration provision was not substantively unconscionable. They argue that several portions of the arbitration agreement are one-sided and unduly oppressive, including (1) rules pertaining to the finality of the arbitrator's decision; (2) the cost of the arbitration; and (3) the parties' rights to seek relief outside the arbitration process thorough self-help remedies or small claims court.

We first set forth the legal principles governing the substantive unconscionability analysis. We then analyze the challenged arbitration provisions, and determine that only the finality provisions support a substantive unconscionability finding in this case. We then explain our conclusion that although these finality rules appear to favor the stronger party (the dealer), they also provide certain advantages to the consumer, and, as a whole, they are not so unreasonably harsh that they preclude enforceability of the arbitration

21

provision in this case, particularly when weighed against the court's finding of only a low level of procedural unconscionability.

A. *Summary of Substantive Unconscionability Standard*

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." (*Pinnacle, supra*, 55 Cal.4th at p. 246.) The courts have articulated several different standards to evaluate a substantive unconscionability challenge, including whether the contract provisions are: " ' " 'overly harsh' " ' [citation]," " ' "unduly oppressive" ' [citation]," " ' "so one-sided as to 'shock the conscience' " ' [citation]" or " 'unfairly one-sided' [citation]." (*Sonic II, supra*, 57 Cal.4th at p. 1145.) Although the California Supreme Court has yet to settle on which (if any) of these rules define the precise substantive unconscionability standard, the court has made clear that "[a]ll of these formulations point to the central idea that the unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party.' " (*Ibid*.) Under this principle, "courts may not decline to enforce an arbitration agreement simply on the ground that it appears to be a bad bargain or that one party could have done better. The unconscionability doctrine is instead concerned with whether the agreement is unreasonably favorable to one party, considering in context 'its commercial setting, purpose, and effect.' " (*Id.* at p. 1148.)

The unconscionability analysis requires the court to focus on the circumstances at the time the agreement was executed, and not on later events or the particular dispute between the parties. (Civ. Code, § 1670.5; *American Software, Inc. v. Ali* (1996) 46

22

Cal.App.4th 1386, 1391.)  Additionally, even though a provision is unduly one-sided, it may not be unconscionable when the party that is imposing the provision offers a legitimate business justification based on " 'business realities.' "  (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 117-118.)  However, " 'unless the "business realities" that create the special need for such an advantage are explained in the contract itself,' " they " 'must be factually established.' "  (*Id*. at p. 117.)

## B.  *Finality Provisions*

Plaintiffs challenge the fairness and mutuality of the arbitration clause's finality rules, which state:

> "The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel.  The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs."

### 1.  *"Excess of $100,000" Exception*

Plaintiffs first argue this finality provision is unconscionable because it provides an exception to finality if the arbitration award exceeds $100,000.  Plaintiffs argue that although this provision on its face applies to both parties, its practical effect is to favor Direct Auto because Direct Auto is the only party that will suffer an award against it in excess of $100,000, and the provision unfairly precludes plaintiffs from appealing a monetary award that is too low but is more than zero.

23

We agree that Direct Auto is the only party that would realistically benefit from the $100,000-plus finality exception. Even if Direct Auto prevailed on a collection action with interest, the arbitration award against plaintiffs would not reach $100,000 because the total purchase price of this vehicle was less than $20,000 and California law generally prohibits arbitrators from awarding prevailing party attorney fees against a consumer. (Code Civ. Proc., § 1284.3.) On the other hand, if plaintiffs prevailed in a consumer fraud-type case, an arbitration award could easily be more than $100,000 when considering the protective consumer laws, potential statutory penalties, and prevailing attorney fee provisions in the parties' contract. Although an arbitrator is precluded from awarding prevailing party attorney fees against a consumer, this same rule does not apply where a prevailing consumer seeks to recover attorney fees against the seller/creditor. (See Code Civ. Proc., § 1284.3.)

In *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, the California Supreme Court found an arbitration agreement in an employment agreement was unconscionable because it set forth a minimum monetary appellate threshold and the practical effect was to substantially benefit the economically stronger party (the employer). (*Id.* at pp. 1071-1074; see also *Saika v. Gold* (1996) 49 Cal.App.4th 1074, 1080 [finding unconscionable a $25,000 award minimum to trigger a de novo arbitration].) Direct Auto argues this case is different from *Little* because the arbitration provision grants the consumer the chance to contest an award of no damages. However, this rule does not favor only the consumer. Viewing the contract at the time it was executed, both parties are potentially permitted to appeal a zero-damages award (either party could be a plaintiff in an action under the

24

contract). Although it is perhaps more likely that the consumer will be the party to bring an action, the car dealer may also be the plaintiff under various scenarios, including the buyer's failure to make full payment for the automobile. Because both parties may realistically benefit from the $0 damages exception, this provision does not ameliorate the fact that the $100,000-plus exception significantly favors only the seller/creditor.

Direct Auto argues that the $100,000 minimum reflects a legitimate business decision because it will eliminate "outlier" awards. However, it is not clear on the record before us that this amount is an "outlier" award, and there are no equivalent exceptions for a consumer who receives an "outlier" award in the form of a substantially reduced amount (that is more than zero) as compared to the value of his or her claim. It appears likely the drafters of the arbitration provision included the $100,000-plus finality exception to ensure that the seller/creditor would have a second chance at arbitration if an award is sufficiently large to justify the costs of multiple arbitrations. Although this may be a reasonable business justification, this purpose would generally benefit only the appealing seller/creditor and does not provide equivalent protections for the consumer.

## 2. *Injunction Exception*

Plaintiffs next challenge the injunction exception to the finality rule, asserting that it raises significant concerns regarding the one-sided nature of the arbitration clause. This exception provides a party with a right to compel a second arbitration before a three-person arbitration panel if the first award "*includes* . . . injunctive relief." (Italics added.) This exception does not provide equivalent appellate rights to the party who does not prevail on an injunctive relief claim.

25

We agree with plaintiffs that this exception advantages only the seller/creditor. As with plaintiffs' complaint (seeking solely injunctive relief on two causes of action), vehicle purchasers frequently seek injunctive relief because it is a remedy to protect the public from further alleged unlawful actions and/or to obtain immediate relief regarding the use of the vehicle. (See *People v. Pacific Land Research Co.* (1977) 20 Cal.3d 10, 16-20; *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103-108.) When buyers bring statutory consumer claims against sellers/creditors, many of the statutes specifically provide for injunctive relief, regardless of the amount of damages/restitution awarded. Under such circumstances, a seller/creditor who receives an award against it between $0 and $100,000 will have the right to appeal the *entire* award if the award "includes" injunctive relief.

There is no reasonable possibility that a consumer can take similar advantage of this finality exception because it is unlikely that a car dealer/creditor will seek or obtain injunctive relief against a buyer. If a creditor seeks immediate or equitable relief after a default, the seller/creditor has the option to exercise its repossession rights or seek a writ of prohibition in superior court while the arbitration proceeding is pending. (See Code Civ. Proc., §§ 512.010, 1281.8, subd. (b).) Consumers have no equivalent rights, and must bring their claims for provisional or permanent equitable relief in the arbitration proceedings. Additionally, as one federal district court recognized, allowing an appeal of an arbitration award merely because it includes preliminary or permanent injunctive relief would create substantial delay, undermining the urgency of that type of remedy and defeating the goals of arbitration to provide a relatively prompt and efficient method for

26

obtaining necessary relief. (See *Trompeter v. Ally Financial, Inc.* (N.D. Cal. 2012) 914 F.Supp.2d 1067.)

### 3. *Second-Arbitration Cost Provisions*

Plaintiffs also challenge the portion of the arbitration clause requiring the appealing party to *advance* the *full costs* of the second arbitration, *including the costs of the three-arbitrator panel*. Plaintiffs argue that this provision raises fairness concerns for the consumer. Under this provision, if plaintiffs were to challenge an arbitration award, they would be responsible for advancing the costs and fees of that appeal for *both* parties, including the fees for the three-arbitrator panel. Given the evidence showing the common hourly rates of private arbitrators are between $250 and $650, it is reasonable to conclude that plaintiffs would face the prospect of advancing a minimum of $10,000 to appeal an arbitration award. Additionally, unlike the filing fee waiver provisions, there is nothing in this arbitration agreement or AAA rules providing for a waiver of *these* appellate-upfront fees if plaintiffs could not afford to pay these fees. The lack of an effective procedure for a consumer to obtain a waiver of a cost requirement before the consumer must pay *in advance* the entire costs of a second arbitration proceeding, *which include the costs of a three-arbitrator panel*, is a relevant factor in the unconscionability analysis. (See *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 90-92 (*Gutierrez*).)

### 4. *Conclusion Regarding Finality Exceptions*

Reviewing these challenged provisions *together*, we agree they create a situation in which the arbitration finality rules significantly benefit the economically stronger party (the automobile dealer) to the detriment of the weaker party (the consumer) and, in doing

27

so, defeat an essential purpose of the FAA, which is to encourage efficient and speedy dispute resolution. (*Concepcion, supra*, 131 S.Ct. at p. 1749; see also *Sonic II, supra*, 57 Cal.4th at pp. 1140, 1143-1144; *Pinnacle, supra*, 55 Cal.4th at p. 235, fn. 4.)

But we note that this lack of mutuality is somewhat ameliorated by other factors. For example, the second-arbitration cost burden is more likely to fall on the dealer because (as discussed above) the dealer is the party more likely to have the opportunity to request the second arbitration. Additionally, the fact that arbitration award challenges are strictly limited to the "$0" or $100,000-plus situations may provide a substantial benefit to the consumer by making it more likely the decision will be final with no second-chance or appellate challenge permitted. This contrasts to the judicial litigation alternative where every judgment in the consumer's favor may be appealed.

On balance, the arbitration clause's finality exceptions are moderately substantively unconscionable.

### C. *Self-Help and Small Claims Remedies*

Plaintiffs also contend the final paragraph of the arbitration provision is unconscionable. This paragraph begins: "You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit."

Plaintiffs contend this provision, in practical effect, benefits only Direct Auto because car dealers are the only parties that use self-help remedies (e.g., repossession).

28

We agree repossession is a common recourse for sellers against a defaulting buyer, and buyers do not have an equivalent self-help remedy. However, excluding this remedy from arbitration is not oppressive or unfair because self-help remedies are, by definition, outside the judicial system. In other words, the fact the buyer has no corresponding self-help remedy is not a consequence of the arbitration agreement. Under the applicable statutes and the parties' contract, a seller has the right to repossess a vehicle when the buyer defaults and required payments are not being made. (See Civ. Code, § 2983.3, subd. (b).) The creditor may exercise its rights to this self-help remedy without bringing this claim to court. There is nothing harsh or one-sided about exempting repossession from arbitration when it is exempt from the judicial process. To the extent the seller/creditor seeks to obtain a deficiency after the repossession and sale, this is not a self-help remedy, and the seller/creditor could elect to bring any such claim in the arbitration process.

In this respect, plaintiffs' reliance on *Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846 is misplaced. In *Flores*, a home mortgage lender sought to compel arbitration on claims brought by the homeowner. (*Id.* at p. 849.) The arbitration agreement exempted from arbitration not only claims outside the judicial process (nonjudicial foreclosure) but also claims that must be brought in court (judicial foreclosure). (*Id.* at p. 849-850.) The court found this provision unconscionable because the broad exclusion affirmatively provided the lender with the unilateral opportunity to bring certain of its claims in court, even during the pendency of the arbitration process. (*Ibid.*) The exemption for true self-help remedies (i.e., repossession) in this case does not

have a similar effect because the remedy is by definition already outside the judicial process.

Moreover, in *Pinnacle*, the California Supreme rejected the argument that an arbitration provision is necessarily substantively unconscionable merely because it excludes certain claims that would be more likely brought by the more powerful party. (*Pinnacle, supra*, 55 Cal.4th at pp. 246-250.) In *Pinnacle,* the agreement required the homeowners association and property owners to arbitrate all construction disputes with the developer without requiring the developer to arbitrate any of its nonconstruction-related claims against these parties. (*Id.* at pp. 248-249.) The court found the agreement enforceable, explaining that "arbitration clauses may be limited to a specific subject or subjects and that such clauses are not required to 'mandate the arbitration of all claims between [the parties] in order to avoid invalidation on grounds of unconscionability.' " (*Id.* at p. 248.)

Plaintiffs also failed to meet their burden to show the exemption of small claims disputes is unduly harsh or unfairly one-sided. On its face and in practical application, the provision is mutual. (See *Arguelles-Romero v. Superior Court* (2010) 184 Cal.App.4th 825, 845, fn. 21.) Vehicle purchasers frequently have small claims disputes with sellers—for example, for the cost to repair a defective condition of the vehicle—and it would not be unfair that this dispute would be exempt from arbitration. Consumers benefit from this exception by having a faster and much less expensive dispute resolution forum to resolve claims under a certain monetary amount without needing to retain an attorney. The fact that injunctive or other forms of equitable relief are not available in

30

small claims court does not make the small claims exclusion particularly unfair or one-sided with respect to the claims that do fall within the small claims court's jurisdiction. As *Pinnacle* held, substantive unconscionability does not arise merely because an arbitration clause limits the type of claims subject to arbitration, even if those limitations mean that one party's claims are more likely to fall within the scope of the arbitration clause. (*Pinnacle, supra*, 55 Cal.4th at pp. 248-249.)

The court did not err in finding the self-help and small claims court exclusions were not unconscionable.

### D. *Arbitral Forum Costs*

Plaintiffs also contend the arbitration clause is substantively unconscionable because the arbitration costs "means they would be left with no forum in which to pursue their claim . . . ."

An arbitration clause may be found substantively unconscionable if the filing and/or administrative fees are so high as to make access to the forum impracticable. (See *Sonic II, supra*, 57 Cal.4th at pp. 1144-1145; *Gutierrez, supra*, 114 Cal.App.4th at pp. 90-92; see also *American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. __ [133 S.Ct. 2304].) " '[I]t is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are prohibitively high. Whatever preference for arbitration might exist it is not served by an adhesive agreement that effectively blocks every forum for the redress of disputes, including arbitration itself.' " (*Sonic II, supra*, at pp. 1144-1145.)

In this case, the court rejected plaintiffs' argument that the costs were so "exorbitant that they [could not] afford" to present their claims in this forum. The court emphasized the evidence showing that AAA maintains a procedure for waiver of fees and costs for indigent parties, and that the record showed the costs would be no more than the costs to litigate their claims in court. The evidence also showed that Direct Auto would be primarily responsible for paying the daily administrative costs and funding the filing fees up to $2,500. Substantial evidence supported the court's conclusion that the costs would not preclude plaintiffs from fairly presenting their claims in an arbitration forum. Further, as noted above, plaintiffs' failure to designate and set forth *all* of the evidence— both favorable and unfavorable—on the affordability issue and their failure to preserve the record of the evidentiary hearing means they have forfeited their right to challenge the sufficiency of the evidence on the court's affordability finding.

## V. *Conclusion*

We have found that plaintiffs did not meet their burden to show the court erred in finding there was only a low level of procedural unconscionability in this case. We have further found that the court correctly determined that the exclusion of small claims and self-help remedies did not render the arbitration provision substantively unconscionable, and that plaintiffs did not meet their appellate burden to show the court erred in rejecting their argument that the arbitration costs were so high as to preclude them from presenting their claims in the arbitration forum.

But we have also found the arbitration clause's exceptions-to-finality provisions appear to be one-sided and substantially benefit the stronger party (Direct Auto) to the

detriment of the weaker parties (plaintiffs).  The combination of the $100,000 trigger, the second-arbitration cost burdens, and the injunctive relief exception creates an agreement that is more favorable to the automobile dealer.  On the other hand, as we have explained, because the dealer is the party more likely to trigger the second arbitration, the second-arbitration cost burden is more likely to fall on the dealer rather than the consumer.  Additionally, the provisions limiting appeals only for a "$0" award or an award over $100,000 may provide a substantial benefit to the consumer and promote the advantages of arbitration by making it more likely the decision will be final with no appeal permitted.  If plaintiffs were to litigate their case at trial, *any* award favorable to them would be subject to an appeal, with the attendant substantial costs and delay.  As the *Sonic II* court recently observed, in evaluating an unconscionability claim, a court "must consider not only what features of dispute resolution the agreement eliminates but also what features it contemplates."  (*Sonic II, supra*, 57 Cal.4th at p. 1146.)

On our review of the entire record and mindful of the United States Supreme Court pronouncements, as well as our high court's recent decisions in *Sonic II* and *Pinnacle* regarding the proper evaluation of unconscionability claims, we do not find the moderate substantive unconscionability inherent in the finality-exception provisions precludes the court from enforcing the arbitration agreement.  On balance the arbitration clause provides the parties with greater efficiency and speed, lower costs, and a more focused dispute resolution forum than would litigation.  Although the arbitration provisions are not perfectly fair and do tend to favor the stronger party in some respects,

these facts do not preclude enforcement of the provision under the totality of the circumstances.  Accordingly, we affirm the court's order.

## DISPOSITION

Order affirmed.  Appellants to bear respondent's costs on appeal.


HALLER, J.

WE CONCUR:

McCONNELL, P. J.

McINTYRE, J.