Filed 5/21/26  Issa v. Internet Auto Group CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KALDUNE ISSA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THE INTERNET AUTO GROUP,<br>INC. et al.,<br><br>    Defendants and Respondents. | B348604<br><br>(Los Angeles County<br> Super. Ct. No. 21STCV19638) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Wendy Chang, Judge.  Affirmed.

Auto Fraud Legal Center, Christopher P. Barry and Michelle A. Cook for Plaintiff and Appellant.

Rogers/Smith, Michael C. Rogers, Turner P. McDonald and Robin H. Smith for Defendant and Respondent The Internet Auto Group, Inc.

Stinson and Mary Kate Sullivan for Defendant and Respondent Ally Bank.

## INTRODUCTION

The purchaser of a used car brought an action against the seller, claiming the seller falsely represented that the vehicle was "accident free" and fraudulently charged him for optional paint sealant by falsely claiming it was mandatory. Among other forms of relief, the buyer sought damages and injunctive relief under the Consumers Legal Remedies Act (CLRA) (Civ. Code, §§ 1750 et seq.).[1]

The seller successfully compelled the matter to arbitration based on an arbitration provision in the vehicle sales contract. The arbitrator found in the buyer's favor on his fraud claim and awarded him monetary and punitive damages. The arbitrator otherwise denied the buyer's claims against the seller. The seller then filed a petition in the trial court to confirm the arbitration award, which the court granted over the buyer's objection. The court subsequently entered judgment on the arbitration award.

The buyer now appeals, arguing the trial court erred in compelling his claims to arbitration with the American Arbitration Association (AAA) and in granting the petition to confirm the arbitrator's award. He also opposes the form of the judgment entered by the trial court. For the reasons set forth below, we find no error by the trial court and affirm.

---

[1] All further statutory references are to the Civil Code unless otherwise specified.

**FACTUAL AND PROCEDURAL BACKGROUND**

I.    *Background*

In February 2019, defendant and respondent The Internet Auto Group, Inc. (IAG) purchased a 2015 Tesla Model S from the auction company Adesa.[2] As part of that sale, Adesa provided IAG with vehicle condition and inspection reports that indicated the vehicle "had not incurred any accidents or repainting."  IAG also inspected the vehicle and determined it met Adesa's quality representations.

Once IAG acquired the vehicle from Adesa, it listed the vehicle for resale online, advertising it as "accident free."  Plaintiff and appellant Kaldune Issa (Issa) viewed IAG's listing and went to the dealership to view the vehicle.  He was given various documents, including a current Carfax vehicle history report, all of which reflected no prior accidents for the vehicle.

Issa agreed to purchase the vehicle for $57,250.  The purchase price included a $1,495 charge for an unspecified "accessory."  That accessory was for a vehicle paint sealant applied by IAG.  According to IAG, the paint sealant was an optional accessory that Issa agreed to.  According to Issa, IAG told him the accessory was mandatory, not optional.

The purchase agreement between Issa and IAG contained an arbitration provision that stated, in pertinent part, "Either you or we may choose to have any dispute between us decided by arbitration and not in court or by jury trial."  (Capitals omitted.)  The arbitration agreement also provided that Issa could "choose [AAA] . . . or any other organization to conduct the arbitration subject to [IAG's] approval."  The agreement specified that the arbitration proceedings would be governed by the Federal Arbitration Act (9

---

[2]  Our recitation of the background facts is largely taken from the undisputed portions of the arbitrator's first interim award.

U.S.C. § 1 et seq.) (FAA).  It also advised Issa that "Discovery and rights to appeal in arbitration are generally more limited than in a lawsuit, and other rights that you and we would have in court may not be available in arbitration."

After owning the vehicle for two years, Issa decided to sell it and upgrade to a newer model.  He contacted an automotive wholesaler to assist in the sale.  As part of this process, the wholesaler obtained a Carfax report indicating that the vehicle previously sustained severe damage.[3]

## II.    *Litigation*

In May 2021, Issa sent IAG a demand letter under the CLRA.  (§ 1782, subd. (a).)  The letter was accompanied by a complaint which asserted various causes of action—including a violation of the CLRA—based on the claim that IAG erroneously advertised the vehicle as "accident free" and fraudulently charged Issa for the paint sealant without disclosing what the cost was for or that it was optional.  In response, IAG gave Issa two alternative options to "correct" the issue as permitted by the CLRA.  (§ 1782.) IAG offered to repurchase the vehicle from Issa "at Kelly Blue Book Private Party Value, plus $1,000."  Alternatively, IAG offered to pay Issa $1,000 and get the "reporting error" corrected so the vehicle history reports would no longer reflect a history of damage to the vehicle.  Both offers included an additional payment of $2,500 to cover Issa's attorneys' fees and costs.  Both were also contingent on Issa agreeing to dismiss his complaint in its entirety, not just his CLRA claims.

---

[3]  It is undisputed that before IAG purchased the vehicle from Adesa, it was involved in a collision that resulted in damage to the right rear corner of the vehicle.

4

Issa rejected IAG's offers, claiming they were inadequate, vague, and impermissibly required Issa to dismiss his non-CLRA claims. Issa filed suit against IAG.

Issa's operative first amended complaint asserted causes of action against IAG for: (1) violation of the CLRA; (2) violation of the Song-Beverly Consumer Warranty Act; (3) civil theft; (4) unfair competition under Business and Professions Code section 17200, et seq.; (5) fraud; (6) negligent misrepresentation; and (7) violation of Vehicle Code section 11711. All of Issa's claims arose from the allegations that IAG misrepresented the vehicle as "accident free" and improperly charged him for the optional paint sealant. Issa sought various forms of relief, including compensatory damages, punitive damages, statutory damages, and injunctive relief.

IAG responded by moving to compel arbitration under the sales agreement. IAG's motion noted that the parties previously discussed arbitration but were unable to agree on a forum. The parties' dispute concerned the language in the arbitration provision that gave Issa the choice to arbitrate with AAA "or any other organization . . . subject to [IAG's] approval." Issa proposed that the parties use JAMS rather than AAA. IAG objected to the use of JAMS, arguing that it was significantly more expensive than AAA. IAG's motion was accompanied by a declaration from counsel attesting to recent personal experiences in which JAMS cost approximately $35,000 for a one-day arbitration, while a two-day arbitration with AAA cost only $7,000. IAG claimed that because it had exercised its right under the agreement to object to JAMS, the court should order the parties to arbitration with AAA.

Issa opposed the motion to compel, arguing IAG withheld its approval of JAMS in bad faith. Issa argued that to establish a good faith objection to

5

JAMS based on cost, IAG had to establish that it could not afford to bear the costs of arbitrating with JAMS. Issa argued IAG failed to put forth any such evidence and therefore did not establish that its objection to JAMS was made in good faith. Issa agreed his claims should be resolved in arbitration but asked the trial court to order the parties to arbitration with JAMS rather than AAA.

The trial court granted the motion. The court concluded that under the "plain language" of the agreement, Issa was not bound to use AAA, but that his choice of an alternate forum was nonetheless "subject to IAG's approval." The court held that Issa did not carry his burden to show that IAG's objection to JAMS was made in bad faith. Accordingly, the court ordered the parties to arbitration before AAA.

III. *Arbitration*

The parties arbitrated Issa's claims before Jeffrey H. Dasteel at AAA. After conducting a multi-day merits hearing, the arbitrator issued a series of awards, which we discuss in turn.

A. *First Interim Award*

The arbitrator identified three issues for resolution: (1) the extent to which the vehicle had pre-existing damage and whether IAG knew or should have known of that damage; (2) whether Issa was improperly required to purchase an unknown optional accessory; and (3) whether IAG offered Issa a timely and appropriate remedy under the safe harbor provisions of the CLRA (§§ 1782, 1784).

The arbitrator determined the vehicle previously sustained damage from a collision, and IAG's assertion that the vehicle was "accident free" was

6

a misrepresentation under the CLRA. The arbitrator also determined that IAG violated the CLRA (§ 1770, subds. (a)(14) and (a)(16)) by failing to list the paint sealant as optional in the purchase agreement or associated disclosure documents.

Turning to the CLRA's safe harbor provisions, the arbitrator concluded that IAG's offer to repurchase the vehicle for the Kelley Blue Book value, plus an additional $3,500, constituted an appropriate remedy under section 1782, subdivision (b).[4] The arbitrator similarly concluded that IAG satisfied section 1784 by showing both that its misrepresentation regarding the vehicle's accident history was unintentional and that it adopted reasonable procedures to avoid this type of error.[5] The arbitrator concluded that under section 1784, Issa was barred from asserting any claim for damages based on IAG's "accident free" misrepresentation. However, the arbitrator reached a contrary conclusion with respect to Issa's paint sealant claim, finding IAG failed to present any evidence that it took reasonable steps to avoid this CLRA violation.

The arbitrator then reached Issa's remaining claims. He found in Issa's favor on his fraud claim, awarding him $1,495 in damages based on IAG's

---

[4] Section 1782, subdivision (b) provides in pertinent part that "[N]o action for damages may be maintained under [the CLRA] if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time."

[5] Section 1784 provides that "No award of damages may be given in any action based on a method, act, or practice declared to be unlawful by [the CLRA] if the person alleged to have employed or committed such method, act, or practice (a) proves that such violation was not intentional and resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid any such error and (b) makes an appropriate correction, repair or replacement or other remedy of the goods and services according to the provisions of subdivision[] (b) . . . of Section 1782."

false representation that the paint sealant accessory was a mandatory part of the transaction. The first interim award also addressed, but did not fully resolve, Issa's claim for injunctive relief under the CLRA. The arbitrator concluded that he needed further briefing on the subject. Specifically, he directed the parties to brief the "issue of whether injunctive relief is available in this case" as well as whether the arbitrator had "jurisdiction in this case to grant such relief, and, if so, what form an injunction should take." He also directed the parties to submit additional briefing on Issa's request for punitive damages.

B. *Second Interim Award*

After receiving additional briefing from the parties, the arbitrator issued a second interim award. In it, the arbitrator denied Issa's request for injunctive relief. The arbitrator determined he had the "discretion to determine whether injunctive relief is appropriate under the circumstances of this case." He noted that his "jurisdiction ends with issuance of a final award in this matter and enforcement of an injunction by persons other than [Issa] would be problematic" before concluding that "a combination of actual and punitive damages in this matter best comports with both my jurisdiction and the salutary goal to prevent future misconduct."

The arbitrator also determined that Issa was entitled to an award of punitive damages both to punish IAG and to deter it from engaging in similar conduct with future customers. The arbitrator noted Issa would need the opportunity to conduct discovery on IAG's financial condition. Accordingly, the arbitrator reopened the hearing to allow Issa to propound discovery on IAG "for relevant financial information including (1) [IAG]'s financial

8

condition, and (2) specific information regarding the profitability of . . . IAG's paint sealant product."

## C.    *Punitive Damages Discovery*

Following the second interim award, Issa propounded financial discovery on IAG, though the specific requests served do not appear in the appellate appendix submitted by Issa. Instead, we have email communications between the parties and the arbitrator showing a dispute arose regarding the scope of Issa's discovery, with IAG arguing it was overbroad and unduly burdensome. The parties briefed the issue by email, and the arbitrator ruled, overruling some of IAG's objections while sustaining others. Ultimately, the arbitrator directed IAG to respond to five of Issa's special interrogatories and directed IAG to produce the documents it relied on to support its responses to those special interrogatories. The arbitrator's order noted that this ruling was "without prejudice to [Issa]'s right to seek a further order from me for further production if it identifies specific deficiencies in . . . IAG's production of documents."

IAG did not respond to the interrogatories or produce documents as directed by the arbitrator. Instead, it notified the arbitrator and Issa that it "made diligent and reasonable effort to comply with the order, but despite the same, . . . found it impracticable to comply with the order, due to the several challenges/limitations." IAG offered to stipulate that there was "an evidentiary basis to support an award which gives [Issa] punitive damages derived from [a] single-digit multiplier [of Issa's compensatory damages]." Specifically, IAG suggested a "multiplier of 2" was appropriate under the facts of the case.

9

In response, Issa argued the arbitrator had the power to draw adverse inferences against IAG for its willful noncompliance with the arbitrator's order to respond to financial discovery. Issa suggested the arbitrator should "draw an inference that a multiplier of 9x" was appropriate in calculating punitive damages.

D.    *Final Award*

The arbitrator then issued a final award resolving the award of punitive damages. The arbitrator noted IAG's refusal to respond to discovery and accepted IAG's stipulation to a single-digit multiplier for punitive damages.

The arbitrator also cited authority suggesting the reprehensibility of the defendant's conduct was the most important factor to consider in calculating an award of punitive damages. The arbitrator noted there were five factors to consider in determining the reprehensibility of a defendant's conduct, only two of which were present here: IAG's conduct involved a pattern or practice, and IAG acted with trickery and deceit. The arbitrator reasoned that in the absence of additional aggravating factors, he was constrained to a single-digit multiplier in awarding punitive damages "to comport with due process limits set by the Supreme Court."

The arbitrator concluded, "Based on the relatively low amount of compensatory damages, the highly profitable nature of the fraudulent conduct, Respondent IAG's stipulated financial condition, and the goal to deter Respondent IAG from engaging in this conduct, I find that the proper ratio of punitive damages to actual damages is a multiplier of 7 for a punitive damages award of $10,465."

10

The last page of the seven-page final award—which is also separately titled as the arbitrator's "**<u>Final Award</u>**"—is a numbered list of nine points. The list incorporates the initial and second interim awards by reference before setting out the arbitrator's award of damages. In states that IAG was obligated to pay Issa $1,495 "in fraud damages," $10,465 in punitive damages, as well as additional amounts for prejudgment interest and arbitration fees and costs.

IV.   *Judgment*

In July 2024, IAG filed a petition in the trial court to confirm the award. IAG's petition did not attach full copies of the arbitrator's interim awards and only included the final page of the arbitrator's final award. Issa opposed the petition, arguing the arbitrator's award should be vacated because the arbitrator "manifestly disregarded" the law in ruling on his claims, imposed an "arbitrary" award of punitive damages, improperly waived his unwaivable rights under the CLRA, and denied him a fair hearing by imposing limits on discovery. Issa also argued that under Code of Civil Procedure section 1285.4, it was procedurally improper for IAG to omit full copies of the arbitrator's interim and final awards.

The trial court granted the petition. The court concluded IAG complied with the requirements of Code of Civil Procedure section 1285.4 by providing the arbitration agreement, the name of the arbitrator, and a "copy of the final arbitration award and written opinion." The trial court rejected Issa's arguments, concluding that they amounted to a challenge of the merits of his claims and the validity of the arbitrator's reasoning, which were not valid grounds to vacate an arbitration award.

11

On July 11, 2025, the court entered judgment confirming the arbitration award and entering judgment in Issa's favor against IAG. The judgment provided that IAG was to pay Issa: (1) $1,495 "in fraud damages," (2) $772.95 in prejudgment interest, (3) $10,465 in punitive damages, (4) $6,671.39 in costs, and (5) $200 to reimburse the arbitration filing fee Issa previously paid. The final page of the arbitrator's final award was also attached as an exhibit to the judgment.

Issa timely appealed.

## DISCUSSION

Issa contends the trial court erred in compelling his claims to arbitration before AAA, in granting IAG's petition to confirm the arbitrator's award, and in entering a judgment that included only the final page of the arbitrator's award.

I.  *Motion to Compel Arbitration*

A.  *Legal Standards*

"There is no uniform standard of review for evaluating a trial court's order granting or denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, we adopt a substantial evidence standard. [Citation.] If the court's ruling rests solely on a decision of law or on undisputed facts, we apply a de novo standard of review. [Citation.]" (*Herzog v. Superior Court* (2024) 101 Cal.App.5th 1280, 1294.) "We review de novo the trial court's interpretation of the agreement in the absence of any factual dispute or conflicting evidence regarding the terms of the agreement. [Citation.]" (*Cox v. Bonni* (2018) 30 Cal.App.5th 287, 299.)

12

"The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement." (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 844.)  The party asserting a defense to the enforcement of such an agreement bears the burden of proving the defense.  (*Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747, 754–755.)

B.     *IAG Established a Good Faith Objection to JAMS*

""""Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."""" (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 371 (*Carma*).) The covenant "finds particular application in situations where one party is invested with a discretionary power affecting the rights of another." (*Id*. at p. 372.)  "The implied covenant cannot contradict the express terms of a contract . . . [and] cannot be used to limit or restrict an express grant of discretion to one of the contracting parties." (*Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC* (2010) 185 Cal.App.4th 1050, 1061–1062.)  Nevertheless, "a discretionary power must be exercised in good faith." (*Third Story Music, Inc. v. Waits* (1995) 41 Cal.App.4th 798, 804.)  "A party violates the covenant if it subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable." (*Carma*, at p. 372.)

Here, there is no dispute that the arbitration provision expressly gave IAG the discretionary power to object to an alternate arbitration forum selected by Issa.  The record before us shows Issa proposed only one alternate forum for the arbitration: JAMS.  IAG objected to the use of JAMS based on cost.

The parties dispute whether Issa bore the burden of showing IAG's objection to JAMS was made in bad faith or whether IAG bore the burden of

13

showing its objection was made in good faith. We ultimately do not need to reach this question, as the record before us shows IAG affirmatively established its objection to JAMS was made in good faith.

In moving to compel arbitration, IAG attached evidence regarding the relative expense of AAA and JAMS in the form of actual billing records from those services. This evidence showed arbitration through JAMS was approximately five times more expensive than AAA. IAG's motion also included a declaration from counsel stating that, based on his personal experience arbitrating automotive CLRA actions, JAMS was approximately three times more expensive than AAA. Issa did not rebut this evidence or otherwise show that IAG was wrong about the relative cost of the two providers. Nor did Issa propose any alternate forum beyond JAMS. Instead, Issa argues that under *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 920 (*Sanchez*), IAG could only make a good faith objection to JAMS by showing that JAMS would be so expensive that arbitrating with JAMS "in fact would be unaffordable" for IAG.

Issa's reliance on *Sanchez* is misplaced. In *Sanchez*, the buyer in an automotive sales contract sought to avoid arbitration by raising various claims of unconscionability concerning the arbitration agreement. The arbitration agreement in *Sanchez* provided for an appeal process to a three-arbitrator panel but required the appealing party to pay for "'the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs.'" (*Sanchez, supra,* 61 Cal.4th at p. 918.) Our Supreme Court rejected the plaintiff's claim that this provision placed an unconscionable burden on consumers, concluding that "the provision cannot be held unconscionable absent a showing that appellate fees and costs in fact

14

would be unaffordable or would have a substantial deterrent effect in Sanchez's case." (*Id*. at p. 920.)

*Sanchez* has no application here. It did not concern the good-faith exercise of a party's discretionary contractual right. Issa improperly conflates the standards for unconscionability with the implied covenant of good faith. As our Supreme Court recognized in *Carma*, the standard for the good faith exercise of a discretionary contractual power is one of objective reasonableness. (*Carma*, *supra*, 2 Cal.4th at p. 372.) Thus, even if we were to assume that IAG bore the burden of establishing good faith in objecting to JAMS, that burden only required IAG to show that its objection was objectively reasonable, not that arbitration with JAMS would be unconscionable. A review of the record shows that IAG carried its burden.

IAG produced evidence supporting the reasonableness of its objection to JAMS based on the significantly greater cost of arbitrating with JAMS compared to AAA. Courts have long recognized that "the advantages of arbitration include 'a presumptively less costly, more expeditious manner' of resolving disputes. [Citation.]" (*Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 99 (*Henry*).) Given that one of the purposes of arbitration is to reduce the cost of resolving the parties' dispute, IAG could reasonably withhold its approval of JAMS based on uncontested evidence showing that arbitrating with JAMS would be up to five times more expensive than AAA. In the absence of any other proposed alternate forum, the trial court did not err in determining that Issa was required to arbitrate with AAA.

C.    *Issa's Other Claims of Error*

We also reject Issa's other claims of error concerning IAG's motion to compel arbitration. For example, Issa argues the trial court erred by not

15

utilizing the procedure under Code of Civil Procedure section 1281.6 to appoint an arbitrator. This argument fails for several reasons. First, the statute provides, "If the arbitration agreement provides a method of appointing an arbitrator, that method shall be followed." (Code Civ. Proc., § 1281.6.) It is only where "the agreed method fails or for any reason cannot be followed," that section 1281.6 applies. (Code Civ. Proc., § 1281.6.) The parties' arbitration agreement here provided a method of deciding on an arbitral forum: the arbitration would be heard by AAA unless the parties agreed to an alternative selected by Issa. That method did not fail. Once IAG reasonably objected to JAMS, Issa either had to submit to AAA or propose an alternate forum. His choice to not propose any alternate forum does not mean the contractual method failed.

Additionally, the express terms of the statute make clear that the trial court only has the power to appoint an arbitrator "on petition of a party to the arbitration agreement." (Code Civ. Proc., § 1281.6.) Here, no party petitioned the trial court to appoint an arbitrator under Code of Civil Procedure section 1281.6. Therefore, under the plain language of the statute, the trial court here had no power to appoint an arbitrator sua sponte.

We similarly reject Issa's arguments regarding the purported unconscionability of the arbitration agreement's forum selection clause. In opposing IAG's motion to compel arbitration, Issa did not argue the arbitration agreement was unconscionable or unenforceable. We conclude Issa has forfeited his unconscionability arguments by failing to raise them in the trial court. (See *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 681 (*Pearson*) [finding forfeiture where plaintiff "did not raise the issue of unconscionability" in the trial court]; accord *Moncharsh v. Heily*

16

*& Blase* (1992) 3 Cal.4th 1, 30–31; *Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 328–329.)

II.    *Confirmation of Arbitration Award*

    A.    *Legal Standards*

"Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.' [Citation.]  That limited judicial review, we have explained, 'maintain[s] arbitration's essential virtue of resolving disputes straightaway.' [Citation.]" (*Oxford Health Plans LLC v. Sutter* (2013) 569 U.S. 564, 568.)  There are four statutory bases for vacatur of an arbitration award: (1) "where the award was procured by corruption, fraud, or undue means"; (2) "where there was evident partiality or corruption in the arbitrators"; (3) where a party was "prejudiced" by "misconduct" or "misbehavior" by the arbitrators; or (4) "where the arbitrators exceeded their powers." (9 U.S.C. § 10(a).)

"We review de novo a trial court order confirming an arbitration award . . . . [Citations.]  However, to the extent the trial court's decision to grant a petition to confirm or deny an arbitration award rests on its determination of disputed factual issues, we review the court's orders for substantial evidence. [Citation.]" (*Valencia v. Mendoza* (2024) 103 Cal.App.5th 427, 442.)  Whether the arbitrator exceeded his or her authority is a legal question we review de novo. (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 918, fn. 1.)

"In undertaking our review, however, 'we must draw every reasonable inference to support the award.  [Citations.]' [Citation.]  [¶]  In short, we review the superior court's order de novo, while the arbitrator's award is entitled to deferential review. [Citation.]" (*Ajida Techs. v. Roos Instruments* (2001) 87 Cal.App.4th 534, 541.)  For this reason, we do not "'review the

17

merits of the dispute, the sufficiency of the evidence, or the arbitrator's reasoning, nor may we correct or review an award because of an arbitrator's legal or factual error, even if it appears on the award's face.'" (*EHM Productions, Inc. v. Starline Tours of Hollywood, Inc.* (2018) 21 Cal.App.5th 1058, 1063–1064.)

B. *The Arbitrator Did not Require Issa to Waive his Nonwaivable Right to Injunctive Relief*

Issa argues the arbitration award must be vacated because the arbitrator rejected his request for injunctive relief under the CLRA. Issa contends the arbitrator improperly deemed that Issa waived his nonwaivable right to injunctive relief under the CLRA and therefore exceeded his powers under the FAA. (9 U.S.C. § 10(a)(4).) We disagree.

"'Arbitrators exceed their powers in this regard not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law.' [Citation.]" (*Schoenduve Corp. v. Lucent Techs., Inc.* (9th Cir. 2006) 442 F.3d 727, 731.) "'Manifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law. [Citation.] It must be clear from the record that the arbitrators recognized the applicable law and then ignored it. [Citations.]" (*Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.* (9th Cir. 1995) 44 F.3d 826, 832.) This determination is evaluated under "a high standard" that requires more than "even a serious error" by the arbitrator. (*Lagstein v. Certain Underwriters at Lloyd's, London* (9th Cir. 2010) 607 F.3d 634, 641.) "[A]n agreement to arbitrate a nonwaivable statutory claim does not waive the claim, it simply submits its resolution to another forum. [Citation.]" (*Arguelles-Romero v.*

18

*Superior Court* (2010) 184 Cal.App.4th 825, 839, citing *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98–99.)

The record on appeal does not support Issa's waiver argument. The arbitrator considered Issa's claim for injunctive relief, expressly directing the parties to submit additional briefing on that claim. As directed by the arbitrator, Issa briefed the issue. The arbitrator considered Issa's claim for injunctive relief on its merits, considering and rejecting his arguments before ultimately denying Issa's request for injunctive relief based on concerns regarding the limits of his jurisdiction and the availability of an adequate remedy at law. It is therefore clear from the record that the arbitrator resolved Issa's claim for injunctive relief on the merits.

Issa's reliance on *Pearson* is misplaced. In *Pearson*, the plaintiff brought claims against his employer for discrimination under the California Fair Employment and Housing Act (FEHA). (*Pearson*, *supra*, 48 Cal.4th at p. 670.) The arbitrator determined that the plaintiff waived his FEHA claims by failing to submit them to arbitration within the time limit imposed by the Code of Civil Procedure. (*Id.* at p. 672.) The *Pearson* court concluded the arbitrator erred in finding a waiver. (*Id.* at p. 675.) It then determined that the arbitrator's award had to be vacated because the arbitrator did not just misinterpret "the law governing the claim" but rather misconstrued the "procedural framework" for the arbitration itself and that as a result the plaintiff would "be unable to receive a hearing on the merits of his FEHA claims *in any forum.*" (*Id.* at pp. 679–680.) *Pearson* bears no resemblance to the facts of this case. Here, the arbitrator made no finding of waiver or forfeiture and instead addressed the merits of Issa's claim for injunctive relief under the CLRA. On such facts, *Pearson* does not apply.

19

C.    *Punitive Damages*

Issa argues the arbitrator's award of punitive damages was either procured by undue means or the result of arbitrator misconduct.  (9 U.S.C. § 10(a)(1), (a)(3).)  Issa argues the arbitrator's decision to award Issa $10,465 in punitive damages was inherently arbitrary because there was no evidence in the record of IAG's financial condition or the profitability of its paint sealant.

"Undue means" in the context of the FAA refers to conduct that "is immoral if not illegal." (*A.G. Edwards & Sons, Inc. v. McCollough* (9th Cir. 1992) 967 F.2d 1401, 1403 (*A.G. Edwards*).)  To justify vacatur, the undue means must be (1) not discoverable upon the exercise of due diligence before or during the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence.  (*Id*. at p. 1404.)

Courts may vacate an arbitration award upon finding that "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."  (9 U.S.C. § 10(a)(3).) "The Supreme Court and Ninth Circuit have set a high bar for those who move to vacate an arbitration award" under this provision of the FAA. (*Lindsey v. Travelers Commer. Ins. Co.* (E.D. Cal. 2022) 636 F. Supp. 3d 1181, 1184.)  Our review is both limited and "highly deferential." (*Ibid*.)  In conducting our review, we "do[] not ask whether the arbitrator's decisions were right or wrong; rather, [we] ask[] 'whether the parties received a fundamentally fair hearing.' [Citation.]" (*Ibid*.)  "A hearing is fundamentally fair if the minimal requirements of fairness—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator—are met."

20

(*Carpenters 46 N. Cal. Counties Conference Bd. v. Zcon Builders* (9th Cir. 1996) 96 F.3d 410, 413.)

The record before us shows that the arbitrator's award of punitive damages was not procured by undue means. Nor was it the result of arbitrator misconduct or misbehavior. Rather, it was based on the arbitrator's analysis of applicable state and federal authorities, his determination of witness credibility at the merits hearing, and his consideration of the reprehensibility of IAG's conduct.

Issa is correct that there was no evidence presented regarding IAG's financial condition or the profitability of its paint sealant. But this is not fatal to an award of punitive damages. Courts regularly uphold punitive damage awards where, as here, the defendant refuses to produce relevant evidence of its financial condition. (See, e.g., *Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 608–609 [affirming award of $96,000 in punitive damages where defendant failed to comply with trial court's order to produce relevant financial information].)

Issa's arguments on appeal are also inconsistent with his arguments in the arbitration. When IAG stated that it was not going to produce the financial information ordered by the arbitrator, Issa did not take the position that the arbitrator could not make an award of punitive damages without IAG's financial information. Nor did he ask the arbitrator to make any further order compelling IAG to produce the financial information as previously directed. Instead, Issa argued only that the arbitrator should use a nine-times multiplier rather than the two-times multiplier suggested by IAG. On appeal, Issa offers no explanation why a nine-times multiplier would have been permissible in the absence of IAG's financial information,

21

but applying a seven-times multiplier in the same evidentiary vacuum constituted undue means or arbitrator misconduct.

On appeal, Issa suggests the arbitrator should have "enforce[d] his own orders for IAG to provide discovery regarding its financial condition." It is unclear how the arbitrator could have done so. The arbitrator issued an order directing IAG to turn over financial documents. IAG refused. Issa provides no authority or explanation as to what additional steps the arbitrator should or could have taken to force IAG to turn over documents. "It is the parties' responsibility to support claims of error with meaningful argument and citation to authority. [Citations.] When they do not furnish legal argument with citation to authority on a particular point, we may treat the point as forfeited and pass it without consideration. [Citations.]" (*Shaw v. Los Angeles Unified School Dist.* (2023) 95 Cal.App.5th 740, 754 (*Shaw*).) "We are not required to examine undeveloped claims or to supply arguments for the litigants. [Citations.]" (*Ibid.*)

We also note Issa did not request a further order compelling compliance in the arbitration even though the arbitrator specifically advised Issa of his "right to seek a further order . . . for further production" if he felt that IAG's production of documents was deficient. Issa apparently chose not to exercise that right. He cannot fault the arbitrator for that decision.[6]

---

[6] To the extent Issa argues that IAG's refusal to turn over financial information constituted "undue means," we reject that contention. IAG's refusal to turn over documents occurred while the arbitration hearing was reopened to allow for financial discovery. To justify vacatur, the alleged "undue means" must not have been discoverable during the arbitration. (*A.G. Edwards*, *supra*, 967 F.2d at p. 1404.) As Issa was aware during the arbitration that IAG was refusing to produce documents, he cannot make that showing.

D.      *Civil Code section 1784*

Issa argues the arbitrator manifestly disregarded the law in finding that IAG established a bar to liability under section 1784 and thereby exceeded his powers.  (9 U.S.C. § 10(a)(4).)  Issa claims the arbitrator misconstrued the term "makes" as it is used in section 1784.  (See, § 1784, subd. (b) [barring liability where the defendant "makes an appropriate correction" to the consumer].)  Issa concedes he is raising a new argument regarding the statutory interpretation of section 1784 that was not raised in the arbitration and runs contrary to the position he took below.  Issa asks us to nonetheless exercise our discretion and reach the merits of his new statutory interpretation argument.  We decline to do so.

E.      *The Arbitrator's Discovery Rulings did not Deprive Issa of a Fair*
        *Hearing*

Issa contends the arbitrator "abused his powers and committed misconduct" by limiting his discovery requests.  We are not persuaded.  Issa's appellate briefing shows only that (1) Issa requested several forms of discovery, including numerous third-party subpoenas, (2) IAG objected to the requested discovery, and (3) the arbitrator, after hearing argument from the parties, sustained IAG's objections in whole or in part.  This showing by Issa is insufficient to carry his burden to establish misconduct by the arbitrator (9 U.S.C. § 10(a)(3)) or that the arbitrator exceeded his powers (9 U.S.C. § 10(a)(4)).

We note that "Arbitrators enjoy 'wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit.' [Citation.]"  (*United States Life Ins. Co. v. Superior Nat'l Ins. Co.* (9th Cir. 2010) 591 F.3d 1167, 1175.)  In agreeing to arbitrate his claims with IAG,

Issa expressly acknowledged that "Discovery . . . in arbitration [is] generally more limited than in a lawsuit." Therefore, it is not enough that the arbitrator limited Issa's discovery requests; he must show the arbitrator was wrong to do so. This he has not done.

While Issa acknowledges the arbitrator sustained IAG's objections to several of his discovery requests, he does not undertake any examination of his specific requests, IAG's objections, or the arbitrator's rulings on those objections. In other words, Issa has not shown that the arbitrator committed any error in limiting or denying his discovery requests. He simply asserts in conclusory fashion that the arbitrator must have been biased against him because the arbitrator ruled against him on many discovery disputes.

"The burden of establishing grounds for vacating an arbitration award is on the party seeking it." (*United States Life Ins. Co. v. Superior Nat'l Ins. Co., supra,* 591 F.3d at p. 1173.) It is also "a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) Issa cannot carry his burden simply by showing the arbitrator limited his discovery. He has therefore failed to establish that the arbitrator committed misconduct or exceeded his powers in this regard.

It may be that Issa "did not enjoy a perfect hearing; but [he] did receive a fair hearing." (*Employers Ins. of Wausau v. National Union Fire Ins. Co.* (9th Cir. 1991) 933 F.2d 1481, 1491.) He had notice, he had the opportunity to be heard and present evidence, and the record before us does not reflect that the arbitrator was infected with bias. (*Ibid.*) Issa "was entitled to no more" than that. (*Ibid.*; accord *Sunshine Mining Co. v. United Steelworkers*

24

*of America, etc.* (9th Cir. 1987) 823 F.2d 1289, 1295 [an arbitration "is fundamentally fair" if it provided the parties with "adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator"].)

III.    *Issa's Objection to the Form of the Judgment*

Issa argues we must reverse the trial court's judgment because IAG's petition only included the final page from the arbitrator's final award and did not include the arbitrator's first or second interim awards. The parties dispute whether the terms of Code of Civil Procedure section 1285.4 required IAG to attach full copies of the arbitrator's final award and interim awards.[7] We need not resolve this question. In opposing IAG's petition, Issa filed full copies of the arbitrator's final and interim awards. It is therefore undisputed that these documents were all before the trial court when it ruled on IAG's petition to confirm the award. We can discern no prejudice Issa suffered from the fact that full copies of the final and interim awards were submitted in opposition to IAG's petition rather than in support of it.

Issa also argues the trial court erred by entering a judgment that only attached the final page of the final arbitration award, claiming that "[o]ver [his] objection [citation], the trial court entered a judgment that includes only the last page of the final award and fails to confirm the award *as made*." This assertion is not supported by the record. The record indicates that a proposed judgment was circulated to the parties after the trial court granted IAG's petition to confirm. It also appears that a proposed judgment was

---

[7]  Code of Civil Procedure section 1285.4 provides in pertinent part that a petition to confirm an arbitration award shall "[s]et forth or have attached a copy of the award and the written opinion of the arbitrators, if any." (Code Civ. Proc., § 1285.4, subd. (c).)

subsequently served on all parties in May 2025. That proposed judgment attached only the final page of the final award. Nothing in the appellate appendix prepared by Issa indicates that he ever objected to the proposed judgment on the basis that it should have included full copies of the final and interim awards. "[I]f it is not in the record, it did not happen." (*Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364.) We conclude Issa has forfeited this claim of error by failing to raise it below. (*Henry, supra,* 233 Cal.App.3d at pp. 100–101; *Egelston v. State Personnel Bd.* (2025) 112 Cal.App.5th 1050, 1055.)

We also note Issa's argument on this point is not supported by reasoned argument or pertinent authority. Issa provides no authority suggesting that a judgment must attach the entirety of the arbitrator's written opinion or reasoning to be deemed to be "in conformity" with an arbitration award. We need not consider perfunctory arguments that are not supported by reasoned argument and pertinent legal authority. (*Shaw, supra,* 95 Cal.App.5th 754.)

## DISPOSITION

The judgment is affirmed. Issa's requests for judicial notice are denied. IAG is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:



MORI, J.                              COGLIATI, J.*

*Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.